28 P.(2d) 1040

## GILLESPIE v. O'NEIL.

No. 3871.

Supreme Court of New Mexico.

Jan. 22, 1934.

Crampton, Darden & Robertson, of Raton, for appellant.

Fred J. Voorhees, of Raton, for appellee.

WATSON, Chief Justice.

This is an appeal from a final judgment for $2,755 rendered as the value of cattle replevined; the plaintiff having failed in his claim of ownership.

The suit was commenced by Gillespie as administrator, on a claim that the cattle were owned by his intestate. Comp. St. 1929, § 45-601, was therefore applicable. This appeal is based entirely upon the theory that the learned trial judge, in holding appellee rather than appellant's intestate to have been owner of the cattle, violated the rule generally referred to as regarding "matters equally within the knowledge of the deceased," but, under our peculiar statute, more correctly,

"matter occurring before the death of the deceased." Our statute does not exclude testimony by the adverse party as to such matters, but provides that he shall not obtain judgment thereon unless his testimony be corroborated by some other material evidence. Such testimony, without corroboration, has no force or effect. Gildersleeve v. Atkinson, 6 N. M. 250, 27 P. 477.

From 1906 until her death in 1928, appellant's intestate lived with her son, the appellee. Prior to 1900 she had acquired two heifer calves which, with the increase, she took with her and put in appellee's possession when she went to live with him. At the time of her death appellee had possession of the cattle in question, with other cattle, which he had for many years kept together and pastured on lands belonging in part to himself and in part to the deceased. Appellee's brand was cross v on left side and slash on left hip. The cattle in question were and had long been distinguished from the others by an additional slash on the right hip. Those thus distinguished appellee had always referred to as "Grandma's" cattle, meaning his mother's. He marketed cattle from the common herd, but always kept account and paid to his mother the proceeds of sales of "Grandma's" cattle. These facts were undisputed and were found.

The court found additionally that, though the intestate had brought cattle with her and placed them in appellee's possession when she came to live with him, they had all died or been disposed of in or prior to 1908, and that the herd replevined had originated thus: About the year 1906, to provide in a more or less definite manner for his mother's support and maintenance, and in lieu of an allowance, appellee had branded some of his own female stock with the additional slash, and thereafter kept the increase in that brand, never intending any passing of title to his mother.

It is these last-stated findings that appellant claims rest on uncorroborated testimony of appellee.

The court refused to find for appellee that the intestate never claimed to own the cattle; refused to find that there is no evidence in the record showing ownership by the intestate; and refused to find that appellee had always marketed the cattle in "Grandma's" brand without consultation with her or asking her permission.

Upon the theory that certain of the findings rest upon the uncorroborated testimony of appellee, appellant contends: First, that a prima facie case for plaintiff stands uncontradicted and requires judgment for him; and, second, and in the alternative, that the evident weight given to the uncorroborated testimony requires a reversal.

Countering these propositions, appellee contends: First, that a prima facie case was not made for plaintiff, and hence, since the burden of proving ownership was on him, it does not matter what evidence was received contra; second, that there was sufficient corroboration of defendant's testimony to justify its reception and consideration.

■ In urging his first counter proposition, appellee relies upon this finding: "X. The Court further finds from the evidence adduced for plaintiff that the plaintiff has failed

to prove ownership of any of the cattle replevied in this action, and has also failed to prove ownership of any of said cattle to have been in Mary O'Neil at any time." This was one of the findings proposed by appellee. In that immediate connection, the court refused this: "XI. The Court further finds that there is no evidence in the record showing title or ownership to the cattle so replevied to have been in the said Mary O'Neil, or to be in said plaintiff, the Administrator of her estate." And gave this: "XII. The Court further finds from said certificate of brand introduced by plaintiff, and from the evidence adduced, and all of it, that the defendant, at the time of the levy of the writ of replevin herein, was the owner of all of the cattle replevied in this action."

Considering these three requested findings together, the two given and the one refused, we doubt somewhat the intention of the trial judge to hold, as appellee assumes he did, that appellant had failed to make out a prima facie case. But if he did, finding 10, though tendered and accepted as a finding of fact, is really a conclusion. It is not binding upon us in the way that we are bound by the ultimate facts found as to branding, marketing, and accounting for the cattle, and referring to them as "Grandma's." It must square with such ultimate facts or be disregarded.

▮ Given the facts that appellee's intestate brought cattle of her own with her when she came to live with appellee, that he at once established for her a separate distinguishing mark, that he branded all increase with that mark, always held out as hers the cattle so marked, and accounted strictly to her for the proceeds of all cattle sold from those so marked, and absent other facts, we cannot escape a necessary inference of ownership by appellant's intestate, and must conclude that a different inference would be erroneous. It would be "contrary to all of the evidence, the proper inferences, and the probabilities of the case." In re Faulkner's Estate, 35 N. M. 125, 290 P. 801, 802.

On the other hand, if the original stock and all its increase was exterminated by death or otherwise disposed of, as the court found, and appellee from his own stock started a new herd, as the court found, not by way of gift to his mother, but merely as a method of providing for her "support and maintenance in a more or less definite manner, and in lieu of an allowance," these positive facts defeat the inference from the other facts.

Are these latter facts properly in the case? Plainly they are "matters occurring before the death of the deceased person." No witness other than appellee claimed to have any knowledge of them. It would seem that appellee has gained a decision on his own uncorroborated testimony in respect to matters occurring before the death of his adversary's intestate.

Some light is perhaps shed upon appellee's theory by his requested finding XIV: "XIV. The court finds that the testimony of the defendant concerning his ownership of the cattle from him taken under the writ of replevin issued in this cause is corroborated by the evidence and testimony of the plaintiff and his witnesses."

This would imply that "ownership of the cattle" was deemed the "matter occurring," as

to which any testimony of appellee required corroboration, and that the evidence adduced by appellant of appellee's possession of the cattle for more than twenty years, of his management and control of them, and that they all bore appellee's recorded brand as well as the distinguishing mark, was corroborative of appellee's claim of ownership.

The finding was refused, but it seems to represent the view of present counsel for appellee. In urging his first point, he remarks that "there is no * * * direct, positive testimony that the cattle in question did belong to or were ever owned by the decedent * * *." In the second branch of his argument he strongly relies upon the brand recorded in appellee's name as corroborative and as independent proof.

■ "Ownership" was the very matter in controversy, the all-embracing issue. It was to be determined, however, upon existing facts. Neither plaintiff nor defendant could jump over the facts and testify to the conclusion. In this case the facts were all "matters occurring before the death of the deceased person." It is not so much appellee's claim of ownership for which corroboration is to be sought. It is his testimony as to "matters" which, if true, go to establish the claim. Those matters are that his mother's stock died or were sold, and that he supplied their place from his own stock, but in doing so kept title in himself. These are the "substantive facts, without which the case of the plaintiff (defendant here) must fail," and to

which the corroboration must go. Gildersleeve v. Atkinson, supra.

After plaintiff had made a prima facie case of ownership, the laboring oar came to appellee. He then made the issues of fact by his testimony. Admitting the fact relied on by appellant, that the decedent had owned cattle and brought them with her, he sought to overcome it by showing two affirmative facts, both matters occurring before the death of the intestate. Here was the matter to be corroborated; just as it was for Colonel Bujac in Cardoner's estate, and for Colonel Prichard, in Owen's estate, to corroborate his own testimony as to a contract of employment. Bujac v. Wilson, 27 N. M. 105, 196 P. 327; Owen's Estate v. Prichard, 34 N. M. 383, 281 P. 463.

■ Neither appellee's long possession, management, and control, nor his ownership of the brand, is corroborative of his testimony. Moreover, those facts are consistent with either theory of ownership put forward; and as consistent with the facts asserted and relied on by appellant, as with those asserted and relied upon by appellee; hence corroborative of neither. National Rubber Co. v. Oleson & Exter, 20 N. M. 624, 151 P. 694.

The judgment must be reversed. The cause will be remanded, with a direction to proceed consistently herewith.

It is so ordered.

SADLER, HUDSPETH, BICKLEY, and ZINN, JJ., concur.