101 P.2d 179

**EVANS v. EVANS et al.**
No. 4500.

Supreme Court of New Mexico.

Feb. 21, 1940.

Rehearing Denied April 12, 1940.

George A. Shipley and Lorna M. Shipley, both of Alamogordo, for appellants.

J. L. Lawson, of Alamogordo, for appellee.

BICKLEY, Chief Justice.

This is an appeal from the District Court of Otero County from a decree in favor of appellee canceling a deed of conveyance theretofore executed and acknowledged by appellee as grantor and in favor of George B. Evans, her son, now deceased. Mrs. Hattie Evans, one of the appellants, is the widow and sole surviving heir of the said George B. Evans; and she, together with Lorna M. Shipley, the other appellant, as administratrix of George B. Evans, deceased, were defendants in the court below. We shall hereafter refer to appellee as plaintiff and appellants will be designated defendants.

Cancellation of the deed was sought by appellee and decreed by the trial court on the principal ground that there was never a delivery of the deed by plaintiff to defendant's deceased intended or effected, and that possession thereof was obtained by the said George B. Evans surreptitiously and by fraud and without the knowledge and consent of plaintiff and placed upon record during his lifetime, and that no title ever passed thereby.

Defendants assign several errors in their attack upon the findings, conclusions and decree of the trial court, but we shall notice only those which we think are important and determinative of the issues presented.

Though the property was located in Otero County, New Mexico, the mother and son had both been living for years in the State of California and dealings concerning the property were, of necessity,

largely by mail. The defendants rely upon the fact that the son, at the time of his death, was in possession of the deed which had been recorded, and that plaintiff has not by her evidence either overcome the presumption of delivery attending possession nor has her own testimony been sufficiently corroborated by other evidence as required by statute in such cases.

The mother was nearly ninety years of age at the time of the execution of the deed, and was ninety-one when she testified in the case. The son was in poor health, without funds or employment, and it is clear that she wanted him to have the house and lot in question "after" her death. The question is, did she want him to have it "before" her death, and, absent an affirmative answer to the last question, did or could her acts accomplish this result?

In substance, the issues are narrowed down to a determination of the question of whether there was in fact a delivery of the deed to the deceased son during his lifetime, sufficient to pass title, and involved in the answer to this question we find two others which must be answered, viz: (A) Does the evidence of plaintiff support her claim that there was an agreement or understanding on the part of the parties grantor and grantee that title should not pass to the property described by the deed until after her death and no effectual delivery of the deed was contemplated or had? And (B) is there in the record sufficient evidence of corroboration to satisfy the requirement of Section 45-601, N.M. Stat.Ann.Comp. 1929, regarding corroboration of the evidence of "opposite" or "interested" parties to a suit against the heirs, executors, administrators or assigns of deceased persons?

We analyze first the testimony of plaintiff, a woman of the age of 91 years, given by deposition, to determine whether she had made a case for herself to support the court's findings that she never intended that the deed in question should be delivered to her son until after her death, and that by trick and artifice and without her knowledge and consent he obtained possession thereof and had the same recorded. If plaintiff's position is correct and there was to be no delivery of the document until after the grantor's death and in the meantime she herself was to exercise control and to have possession and custody, then, of course, no title did or could pass. See 56 A.L.R. 746, with full annotation. The fact that the grantee was found in possession and had recorded the deed could lend no strength to defendant's position excepting that which supports the rule of law that ordinarily possession of a duly executed conveyance or document is prima facie evidence of actual delivery by the grantor.

But, if this possession for the purpose of holding and recording was gained by trick or artifice and without the knowledge or consent of the grantee, then any presumption which possession supports must give way to another rule, which is that such possession must be accompanied by an intent that the grantee is to take title im-

mediately. Findings supported by proof that the grantor after the execution, retained no power or control over the deed would resolve the dispute in favor of defendants (Arias v. Springer, 42 N.M. 350, 78 P.2d 153), but we do not have such a situation here.

"The intention of the parties, particularly the grantor, is an essential and controlling element of delivery of a deed." 16 Am.Jur. 501, par. 115, citing numerous authorities.

"The party 'could not have intended delivery if the property was not to pass immediately by the deed. Therefore, the inquiry is simplified by asking, did the grantor intend the property to pass?'" 16 Am.Jur. 503, par. 116.

"It is a fundamental rule," the court said in Donahue v. Sweeney, 171 Cal. 388, 153 P. 708, 709, "that, whatever method of delivery is adopted, there must be a plain showing that the grantor by acts or words or both intended to divest himself (or herself) of title."

Many cases may be cited where are found facts similar to those presented in the case at bar, and where possession of a deed has been held to be overcome by proof of the controlling facts and circumstances showing that it was unfairly obtained, or not for the purpose of passing title. Elliot v. Merchants' Bank & Trust Co., 21 Cal.App. 536, 132 P. 280; Hayes v. Boylan, 141 Ill. 400, 30 N.E. 1041, 33 Am.St.Rep. 326; Hotaling v. Hotaling, 193 Cal. 368, 224 P. 455, 56 A.L.R. 734.

Plaintiff, the mother, says that her son paid her nothing for the property in question; that she "wanted him to have the property at my death"; that she was to keep the deed in her possession until her death, and then he was to have it recorded; that the deed was kept in her own possession, in a cedar chest, and one day when she was sick in bed her son came in and told her, "You should have a safety box for your papers for they are not safe in the house when you are alone; I think I will take them up to the bank,"; that she never saw the deed again but that when she got better her son told her he had put all her papers in a safety box at the bank. It is clear that she continued to receive the rents from the property before and after her son's death and she always paid the taxes.

Clearly it must be said, that plaintiff's own testimony would support her claim that she had never delivered the deed to her son with the intention of passing title. We have the deposition of other witnesses upon which plaintiff relies in support of her claim of non-delivery and for corroboration of her own testimony to meet the requirement of the statute aforementioned.

Mrs. Charles Clark, testifying (by deposition) to a conversation with George Evans in the month of October, 1936, some six months before his death, stated that he told her that his mother, the plaintiff had told him, "she wanted him to have her property in Alamogordo at her death", and, that *the deed was to remain in her pos-*

*session so long as she lived, so that she could benefit by the rents while living."*

This last statement would seem to be pretty strong corroboration of plaintiff's testimony. Defendants do not object to the form of the question as set out above. They did and do now contend that the part of the answer above emphasized (quite annihilating to defendants' contention that the findings of non-delivery of the deed are unsupported by any clear and convincing evidence) is objectionable, as not being responsive and as stating a mere conclusion of the witness. It is true, the witness does not undertake to quote haec verba from the conversation. Moreover, the question, unobjected to, did not require as much. The witness was asked: "Give as nearly as you can what George B. Evans said," at the time of the conversation in question.

It seems clear from the testimony that the witness may have been giving as nearly as she could, or, in other words, substantially, that which she vouched for as being the statements of the person quoted. We think the defendants were not prejudiced by the form the answer took, though their defense may have been materially shaken thereby. There is no merit in the objection urged.

One Maud Lennartz, testifying likewise by deposition, said that on or about the 15th of December, 1936, she heard the deceased tell his two sisters that they need not worry about his mother's property "as the deed was in the safe deposit box and

he was not to have it until after her death." This was after the deed had already been recorded, which was on December 4th.

Witness Emma Shafer testified that George Evans had told her, referring to the house in question, "I get the house at my mother's death, and she gets the rent while she lives."

There was testimony as to the somewhat strained relations existing between plaintiff and her son during the last months of his life; of the mother's efforts to protect her right to the property after discovery that the deed had been taken from her possession and recorded, and of the son's efforts to have others, who were on more friendly terms with his mother, secure her signature to some document which would make a sale possible and the title merchantable.

One Mrs. Walton, who was in the real estate and insurance business at Alamogordo, testified to having the property in charge on behalf of plaintiff for a number of years, always collecting and remitting rents to her. She testified to the fact and produced letters showing that she dealt directly with Mrs. Evans, the plaintiff, at all times, even after the deed in question had been recorded by the son; and that plaintiff told her she did not know of the recording of the deed until some time after the event, when she, the plaintiff, undertook immediately to neutralize the effect thereof by an affidavit disavowing delivery of the deed, prepared by her and filed of record in Otero County. She testified that

plaintiff had written her that "George had taken the deed, stolen the deed," and she wanted to know if there was anything to be done about it; that she, the witness, secured advice of counsel and then advised plaintiff to make and have recorded her affidavit of disavowal of delivery of the deed for record, and that this was done.

It is clear that taxes were at all times assessed to and paid by plaintiff; George Evans in a letter written two months before his death, wrote Mrs. Walton, "I want you to handle that property just as you have in the past for my mother, but mail all rent checks to me and I will see that mother gets them, that way I can keep everything in good shape * * * she is to get the rent and pay the taxes."

In another letter, the son concerned about the delay in getting the rent checks from Alamogordo, inquires of Mrs. Walton about the delay and says his mother thinks he is getting the checks and using the money.

The court, in Donahue v. Sweeney, supra, used other language which might be repeated here with profit, since questions of law presented and facts encountered in both that case and this are somewhat alike. There it was said, in speaking of corroboration: "Opposed to the testimony of the plaintiff regarding the manual tradition of the paper are certain circumstances which indicate that his mother did not intend to divest herself of title. Her very injunction that, if anything happened to her, he should make haste to put the deed on record, is one of these circumstances * * * that she executed leases to a part of the premises; that she paid the taxes; and that the insurance was in her name. All of these facts and circumstances were properly considered by the court as tending to rebut the testimony of plaintiff regarding the alleged delivery of the deed to him. It was not shown that plaintiff ever in any way objected to his mother's complete dominion over the property and the treatment of it by her as her own."

■ Section 45-601, N.M. Stat.Ann. Comp. 1929, to which reference has been made, reads as follows: "In a suit by or against the heirs, executors, administrators or assigns of a deceased person, an opposite or interested party to the suit shall not obtain a verdict, judgment or decision therein, on his own evidence, in respect of any matter occurring before the death of the deceased person, unless such evidence is corroborated by some other material evidence." We have passed upon this question many times. "The corroborating evidence must be such as would, standing alone and unsupported by the evidence of the claimant, tend to prove the essential allegation or issue raised by the pleading." National Rubber Supply Co. v. Oleson et al., 20 N.M. 624, 151 P. 694, 696. See also Gildersleeve v. Atkinson, 6 N.M. 250, 27 P. 477; Gillespie v. O'Neil, 38 N.M. 141, 28 P.2d 1040; Bujac v. Wilson, 27 N.M. 105, 196 P. 327; Owens Estate v. Prichard, 34 N.M. 383, 281 P. 463.

■ It is true that the corroborating evidence consists largely of admissions of

the son, testified to by other witnesses. It may also be said that not all of the testimony of such witnesses may be appraised as in corroboration. Some of it may be said to be not inconsistent with defendant's theory. It is enough to say that there is sufficient corroboration to be found in the testimony on behalf of plaintiff, in the light of the circumstances shown, to sustain the findings and conclusions upon which the judgment and decree was based. We need, of course, inquire no further.

Defendants complain of the trial court's misapplication of the rule of presumption obtaining where possession of a duly executed and acknowledged deed is shown. Whatever may have been the court's conception of the applicability of such rule here, defendants' claim is without force because of the findings to the effect that any such presumption is overcome by clear and convincing evidence. The court made a specific finding to that effect.

"The plaintiff was entitled to judgment according to the facts found; and even if the district court erred in some of his conclusions of law, that would not justify a reversal if the findings of fact governed by the correct rules of law are sufficient to sustain the decision." Douglass v. Mutual Health & Accident Ass'n, 42 N.M. 190, 76 P.2d 453, 467.

Finding no error, the judgment will be affirmed, and it is so ordered.

BRICE, ZINN, SADLER, and MABRY, JJ., concur.