**232 P.2d 701**

**GORMAN et al. v. BOEHNING et al.**

. No. 5346.

Supreme Court of New Mexico.

April 26, 1951.

Rehearing Denied July 2, 1951.

K. Gill Shaffer, Albuquerque, for Boehnings.

Moses & Vaught, Albuquerque, for Mays.

Owen J. Mowrey, Albuquerque, for appellees.

COMPTON, Justice.

This is a class action by appellee, Lee Gorman, for herself and others similarly situated, for a declaratory judgment determining whether building restrictions are in effect in the Montevista Addition, a subdivision to the City of Albuquerque, and if so to enforce the same by injunction.

The complaint alleges that the Boehnings are the owners of lot 1 and that the Mays are the owners of a portion of lot 2, block 36, of said addition and that they are now using the same for business purposes in violation of restrictive covenants. They charge similar violations by other owners but the appeal does not involve them. The answers deny any general plan of restriction, restricting the use of the lots to residential purposes. Further answering, appellants claim that if there had been such plan the same was destroyed by reason of foreclosure of paving liens against the lots by the City of Albuquerque. Appellants also defend on the grounds of estoppel by laches and changed conditions in the area whereby it is claimed that restrictions are no longer of value. The court found that restrictions were in effect and, from a judgment for appellees, appellants appeal.

There is but little dispute in the evidence. The addition is bounded on the North by Las Lomas Road, on the South by Central Avenue, on the East by Carlisle Avenue and on the West by Girard Avenue. It is traversed from the Southwest to the Northeast by Montevista Boulevard and from the Northwest to the Southeast by Campus Boulevard. There are some 40 blocks, comprising 707 lots. The subdividers originally designated blocks 4, 5, 6 and 7, facing Central Avenue, and block 38, at the intersection of Las Lomas Road and Carlisle Avenue, as business lots. All other lots and blocks were designated as residential lots. Blocks 8 and 11, facing Central Avenue, and a portion of blocks 12 and 13, on Girard Avenue and Montevista Boulevard, were later designated as business lots. Subsequently, block 39, a rectangular block on Montevista Boulevard and Las Lomas Road, was designated as business lots. In 1942, at the suggestion of the Federal Housing Administration which was financing the construction of residences in the area, a replatting of block 40 was made reclassifying that portion of said block, facing block 39, as business lots.

The Montevista Company conveyed blocks 17 and 23 to the trustees of the Central Christian Church for church purposes, but without other restrictions. The company was dissolved in August, 1944, and lots remaining unsold, approximately 65 in number, were then deeded to the directors of the corporation without restrictions.

It becomes apparent that there was a plan restricting a portion of the area for business property and the remainder for private dwellings. The court found, Finding No. 6, and the parties so stipulated, that the Montevista Company, from its inception, placed restrictions in all deeds covering residential property, except those mentioned in the last preceding paragraph, as follows: "The premises hereby conveyed are located in what is known as the *residence area* of said addition, and it is expressly covenanted and understood that the grantee–, ——— heirs, successors or assigns, shall never erect *more than one dwelling house on any one lot,* nor shall such dwelling house be nearer than twenty feet from the front property line, nor shall such dwelling house be one that costs less than Three Thousand Dollars ($3,000) (this amount varied as to location) to build, and the grantee–, for ——— heirs, successors and assigns, covenant that ——— *will not * * * permit the erection or maintenance of any business house*

* * * *thereon,* * * *." (Emphasis ours.)

This language, standing alone, in our opinion manifests a general plan of restrictions and restricts the use of the lots in question to residential purposes. Hoover v. Waggoman, 52 N.M. 371, 199 P.2d 991, 996. The covenant construed in Meyer v. Stein, 284 Ky. 497, 145 S.W.2d 105, cited in the Hoover case, recites that the property conveyed "shall be used only for the erection of a single residence and no residence shall be erected thereon that shall cost less than $5000." The court said: "No one can read the restrictive covenants in the deeds conveying this property and escape the conclusion that it was the intention of the parties to, and they did, limit the use of the property to residential purposes. If we should accept appellant's argument that such covenants related only to the building of the homes, and placed no limitation upon their use after they were once constructed in conformity with the restrictions, then building restrictions would render the owners of property no benefit and parties incorporating such restrictive covenants in their deeds would be doing a vain thing."

Originally, all deeds from the Montevista Company carried a reversionary clause for violation of restrictions. On August 4, 1938, the company filed a waiver of the clause, in which it said: "* * * Provided, however, that Montevista Com-

pany (N.S.L.) for itself and for the bene-fit of successor vendees and assigns, does not waive nor relinquish the right to have each and all of *said building restrictions and covenants kept and enforced* and does not waive the right to enforce the same, either by itself or its vendees through injunction or any other appropriate legal proceedings, the intention of this instrument being that the Montevista Company (N.S.L.) does .hereby desire to terminate its right to claim a reversion and revesting in it of the title to any tract of land in said addition." (Emphasis ours.)

■ Thus, it again appears that it was the intent of the common owner at the time Montevista Addition was platted to confine the area to private dwellings, except the area designated for business and church purposes. The area so designated, however, does not embrace appellants' lots. That certain lots were conveyed to the directors of the defunct corporation is of no concern.

■■ It is claimed, though restrictions were imposed, that the same had been lost by reason of the titles having been divested through foreclosure of paving liens by the City of Albuquerque. This contention is without merit. A restrictive covenant is something of value to all lots in a tract and cannot be divested by a stranger acquiring title adverse to the common owner. Cases involving the prin-

ciple decisive of this proposition are Alamogordo·Improvement Co. v. Prendergast, 43 N.M. 245, 91 P.2d 428, 432, 122 A.L.R. 1277; Rowe v. May, 44 N.M. 264, 101 P.2d 391, and Hoover v. Waggoman, supra. In the Alamogordo Improvement Co. case, just cited, the townsite company platted an area for both residential and business purposes. A general plan, or scheme, was adopted by it whereby the sale of intoxicating liquor was limited to block 50. Lot 12, block 12 of the townsite was thereafter sold for delinquent taxes. Prendergast purchased the tax title thereto and threatened to sell intoxicating liquor therefrom. The court, in holding that the tax title did not divest restrictive covenants, said: "Defendant here in purchasing from the state, purchased not only a fee simple title 'free and clear of all liens and encumbrances,' but since his lot, like all others of the area, was likewise increased in value because of the restriction, and was likewise taxed upon this additional value, he secured something more than the ordinary or conventional fee simple title. He secured the right which the restriction gave to him and which attached to his lot, to prohibit the owner of any other lot in the area from violating the restriction, which theoretically is as valuable to him as to any other owner."

While the case just cited deals with a tax title rather than a title acquired through foreclosure of paving lien, we find no rea-

.son to deny its application here. See, also, Lowes v. Carter, 124 Md. 678, 93 A. 216; Sanborn v. McLean, 233 Mich. 227, 206 .N.W. 496, 60 A.L.R. 1212.

■ Touching the question of estoppel, ·obviously, appellants knew of the restrictions. The Boehnings, it will be observed, ·not being satisfied with a deed from the ·city, acquired a quitclaim deed from the former owner, Montevista Company. The ·company inserted in its deed ·to· them the following clause, "subject to building restrictions common to this addition which ·may be of record." The Boehnings had resided in the subdivision for several years. They owned and lived upon property immediately across the street from lot 1. There were then more than 500 dwellings . in the subdivision. They were compelled to notice that it was a residential area, ·that its symmetry and appearance did not suggest its use for business purposes. That they knew of the restrictions is further born out by the fact that they constructed what is termed as a "4 room cinder block residence office", an office for architectural purpose.

■ Mays' title also was derived through paving foreclosure. They are now constructing on lot 2 a residential type office building. Previously, they were advised ·of the restrictions and it was suggested that an attempt to use said lot for business purposes would be met with litiga-

tion. Nevertheless, they proceeded to build and as a precaution, there was inserted in the contract for their building a clause which would protect them from damages if the construction should be enjoïned. That the Mays understood the nature of the restrictions is further reflected in a deed made by them conveying a portion of lot 2, to J. L. Hendren and Mildred Hendren, in which they inserted the following language, "subject to building restrictions of record." We are of the opinion that the defense of estoppel is not available to appellants.

■ The court found that both the Boehnings and Mays had actual and constructive notice of the restrictions. It further found that the deeding of blocks 17 and 23 to a religious organization, the replatting of block 40 and conveyances to the directors of Montevista Company did not change the character of the addition nor was there an abandonment of the original plan. It further found that the character of the area has not changed sufficiently to warrant the court in striking down restrictive covenants as being without value. These findings, unfavorable as they are to appellants, are supported by substantial evidence and will not be disturbed on appeal.

■ Numerous findings were made by the trial court favorable to appellees. The Boehnings do not challenge the findings

whatsoever. They claim error by reason of the refusal of the court to make certain requested findings and conclusions. Nor do the Mays challenge the findings, except Finding No. 25, which reads: "That lots 1 and 2 in block 36, were subject to general restrictions imposed by Montevista Company, and that title thereto was relinquished by the company only because of the large special assessments levied by the City of Albuquerque for paving." They claim error, however, by reason of the refusal of the court to make certain requested findings and conclusions. It will be observed that the findings made by the court are supported by substantial evidence and that the findings support the conclusions. The requested findings and conclusions, being in conflict with those made by the court, were properly denied.

The argument is made that appellees are not entitled to injunctive relief. In this regard, at the conclusion of the testimony the parties agreed that the trial court should go upon the subdivision, better to understand the case. The court viewed the situation, saw the rights of appellees invaded, and obviously had but little difficulty in concluding that appellees were entitled to the relief asked for, and that appellants should be enjoined from making use of the lots in question for business purposes. That the court in the circumstances may enforce its mandate by injunction cannot be questioned.

The judgment will be affirmed and it is. so ordered.

LUJAN, C. J., and SADLER and Mc-GHEE, JJ., concur.

COORS, J., not participating.