367 P.2d 531

Oliver ALLSUP and Josephine Allsup, his wife, Plaintiffs-Appellees,

v.

Jackson W. SPACE, Defendant-Appellant.

No. 6763.

Supreme Court of New Mexico.

Dec. 21, 1961.

Lyle E. Teutsch, Jr., Thomas A. Donnelly, Santa Fe, for appellant.

M. W. Hamilton, Santa Fe, for appellees.

CHAVEZ, Justice.

Plaintiffs-appellees, Oliver Allsup and Josephine Allsup, his wife, filed suit against defendant-appellant, Jackson W. Space, seeking damages for breach of an alleged oral contract, or in the alternative, for the reasonable value of appellees' services, including those rendered by their two minor children, Ilene and Robert. Appellees also sought the return of monies loaned appellant and title to a pickup truck registered in his name, for which appellees claimed to have furnished the consideration. The parties will be referred to as they appeared in the court below.

Plaintiffs alleged that defendant was the owner and operator of the Glorieta Pass Boys' Ranch, a summer recreation camp for boys and girls; that defendant proposed to plaintiffs that they come to defendant's ranch to assist in the care, maintenance and operation thereof, Josephine Allsup to do the cooking and housework, and the two minor children to wait on tables and perform other duties in connection with the operation of the ranch; that for said services defendant agreed to give plaintiffs one half of the profits from the 1959 season and one half of any livestock or other property purchased for the ranch during said period; that plaintiffs were to furnish groceries, not obtainable at the ranch, for themselves and defendant, and in return defendant was to supply fuel, water, electricity, a dwelling house, and pay

to Robert $50 per month and to Ilene $75 per month; that plaintiffs loaned defendant $1000 and also expended the sum of $375 in the purchase of horses, saddles, and a pickup truck for the use of the ranch; that plaintiff, Oliver Allsup, performed services of the reasonable value of $3769. Plaintiffs further alleged that they performed their duties pursuant to the agreement from November 2, 1958, to about July 2, 1959, at which time defendant breached said contract, declaring its rescission. Plaintiffs prayed judgment in the total sum of $5696.90.

Defendant filed a motion to dismiss the complaint on various grounds. The trial court denied the motion upon plaintiffs' statement that their suit was based on quantum meruit.

Defendant's answer admitted that he was the owner and operator of the Glorieta Pass Boys' Ranch; that he proposed to plaintiffs that they come to the ranch, assist him in the operation thereof; plaintiffs to supply the groceries for themselves, their family and defendant, and defendant to furnish fuel, water, electricity and a house for plaintiffs. Defendant denied all other allegations of the complaint and asserted the following specific defenses:

(1) That plaintiff, Josephine Allsup, left the ranch about January 1, 1959, and did not return until about April 28, 1959.

(2) That plaintiffs were remiss in their duties and worked only sporadically.

(3) That the alleged loan was in fact not a loan but was used, as both parties intended, for the support of the Allsup family; that said funds were insufficient and that defendant was forced to borrow money to support plaintiffs' family during the winter months; that defendant was forced to work at various jobs for plaintiffs' support and his own, and that he used a monthly payment received from the federal government.

(4) That plaintiff, Oliver Allsup, did not labor continuously at the ranch but at various times worked on construction jobs.

(5) That plaintiffs' children were not made parties-plaintiffs nor joined in the action.

(6) That defendant was entitled to an offset in the amount of $2400 for fuel, water, electricity, meat, gasoline, use of an automobile, clothing, groceries, and a house furnished plaintiffs.

(7) That plaintiffs' quantum meruit claim was based on rates for skilled labor, whereas the labor performed was unskilled.

(8) That plaintiffs were engaged in marital discord after the return of Josephine Allsup in April, and their conduct was detrimental to the general atmosphere of the ranch, thus forcing defendant to request plaintiffs to move from his ranch.

(9) That defendant was entitled to an offset for monies sent to Josephine Allsup

in the sum of $60, and $252.75 paid to Ilene Allsup.

Defendant also filed a counterclaim alleging that he purchased a pickup truck and a saddle which plaintiffs had wrongfully taken. Defendant claimed the sum of $3190.75 as an offset and counterclaim.

Plaintiffs answered the counterclaim asserting that they furnished the consideration for the pickup truck and that both parties understood and agreed that it was plaintiffs' property. Plaintiffs denied that they had wrongfully taken the truck or saddle. Plaintiffs admitted that defendant purchased the additional saddle but alleged that defendant had made a gift of it to Ilene Allsup.

The cause was tried without a jury and the trial court rendered judgment for plaintiffs in the sum of $4622.02.

The facts, briefly stated, are as follows: Plaintiffs, at defendant's request and pursuant to an oral agreement, moved to defendant's Glorieta Pass Boys' Ranch on November 1, 1958, to assist him in operating the ranch and youth camp. Oliver Allsup repaired fences, cut logs, rebuilt a cattle guard and barn, patched the roof, worked on the water system and corrals, and did general ranch chores. He was helped by his son, Robert. Oliver Allsup's usual occupation was as a construction worker, being what is known as a "dozer man" and "fine blade man." He was a skilled laborer with an hourly rate of pay of $2.65. Because of urgent need of cash at the ranch, Oliver Allsup worked for several contractors. In the evenings and on weekends, Oliver Allsup did chores on the ranch such as feeding and caring for the horses and cows and taking care of the nutria, some water dwelling animals similar to a beaver. The evidence also shows that he worked approximately four hours a day in the mornings before going to work and in the evenings upon returning to the ranch. On days that Oliver Allsup worked at the ranch he would average eight to ten hours per day. A memorandum kept by Oliver Allsup shows that he worked about 1460 hours, or an average of 185 hours per month, for which he claimed $3769 at the rate of $2.65 per hour.

In January, 1959, Josephine Allsup and Robert went to Flagstaff, Arizona. She returned to the ranch the last of April and Robert returned about May 15th. During this period Oliver Allsup and Ilene remained at the ranch. During Josephine Allsup's absence, Ilene did the housework, consisting of washing, cooking, laundry and ironing, as well as the typing and bookkeeping. Ilene attended school in Santa Fe. During the camping season the entire Allsup family occupied themselves with the campers.

It also appears that after July 2, 1959, defendant employed a Mr. and Mrs. Mahoney to do the work at the ranch and they were paid $500 per month. Mrs. Mahoney

testified that at least $300 of that sum was wages for her work as a cook. Mrs. Mahoney did none of the housework except to wash the dish towels and occasionally do defendant's personal laundry. Defendant paid someone $60 per month to do the housework. All employees received room and board in addition to their wages. During the camping season there were ten girls and twenty-five boys at the camp at different times. There is evidence that Josephine Allsup was a good housekeeper, even though Mrs. Mahoney testified concerning the poor condition of the kitchen after plaintiffs left the ranch. Josephine Allsup's claim was for only one month at the rate of $1.00 per hour, which is the wage defendant offered to pay her if she would return merely to cook for all at the camp.

There is testimony that from February to May defendant was away most of the time contacting prospective campers and traveling around for advertising purposes, and during this period when Oliver Allsup was not working with contractors he did most of the ranch work. From his work for contractors, Oliver Allsup earned $1036.25, all of which he gave to defendant to be spent on the ranch, or deposited in defendant's bank account. Defendant wrote all checks on said account. Late in May or early June, 1959, Oliver Allsup took his present construction job and retained his earnings. This, he claimed, was according to an agreement with defendant,

since money was then coming in from camping deposits, fees and from the rental of horses.

Oliver Allsup testified that he also contributed $300 of his own funds from the sale of his Arizona property, and $490 in Unemployment checks, which with the sum of $1036.25 made a total of $1826.05 which he gave to defendant.

The evidence further shows that defendant, for two months, had not received any income. Defendant testified that he received a $653.66 government check for building two miles of fence, which money was used by defendant for the purchase of a 1954 pickup truck and for some burial lots in Mesa, Arizona; that he also received a pension check of about $68, and a Soil Conservation payment of about $250 to $300. One horse was purchased for $100. Several saddles were also purchased, including the new saddle claimed by Ilene as a gift.

There is a conflict in the evidence as to the ownership of the pickup truck, but defendant permitted plaintiffs to take the truck and one saddle when they left the ranch. There is a further conflict as to why plaintiffs were asked to leave the ranch. Defendant testified that he asked plaintiffs to leave the ranch because they were having family difficulties. Plaintiffs testified that defendant, without warning, asked them to move out within two days and said that he had decided to call off

their arrangements. Oliver Allsup also testified that when defendant told them to leave, he demanded that he and his family be paid for their services and for monies advanced to defendant. Defendant later acknowledged that plaintiffs should be paid for their work and assistance, but stated that he was entitled to offsets for housing, groceries, meat, water and fuel.

In the main, plaintiffs' evidence concerned the amounts advanced by them toward the operation of the ranch and the reasonable value of their services. Receipt of some of the monies advanced by plaintiffs to defendant was admitted and some denied. Defendant insisted that the reasonable value of Oliver Allsup's services should be based on rates for unskilled labor.

The trial court found: That defendant, the owner and operator of the Glorieta Pass Boys' Ranch, proposed to plaintiffs that they come to his ranch and assist in the care, maintenance and operation thereof; that defendant agreed that if plaintiffs accepted the proposal he would give plaintiffs one half of the net profits for the 1959 season and a one-half interest in all livestock and other property purchased; that defendant also agreed to furnish a house to be occupied by plaintiffs, and to furnish fuel, water and electricity; that plaintiffs were to furnish groceries in addition to performing their duties; that plaintiffs accepted the proposal; that from November 2, 1958, to July 2, 1959, except for a brief period when Josephine Allsup was away, plaintiffs and their children rendered to defendant all of the services which they had agreed to render and fully complied with the agreement; that on July 2, 1959, without just cause, defendant wrongfully rescinded the agreement and advised plaintiffs that he would not fulfill the agreement, and demanded that plaintiffs leave the ranch; that defendant refused to pay plaintiffs in accordance with his agreement and refused to reimburse plaintiffs for monies advanced; that during said period plaintiffs advanced to defendant the sum of $1826.05 which was used by defendant at his sole discretion and direction; that Oliver Allsup rendered personal services of the reasonable value of $2400, taking into account benefits received by plaintiffs and their family; that the reasonable value of the services rendered by the other claimants was as follows: Josephine Allsup—$370.-00, Ilene Allsup—$91.25, and Robert Allsup—$50.00; that defendant was entitled to the pickup truck purchased by him from monies advanced, at least in part, by plaintiffs; that defendant was also entitled to a total offset of $115.28 for certain enumerated items covering money sent to Josephine Allsup and personal accounts paid by defendant; that plaintiffs recover of defendant the total sum of $4737.30, reduced by the total offset to defendant of $115.28, or a net total of $4622.02. The conclusions

of law pertain to defendant's offset of $115.28 and to the net amount plaintiffs are entitled to recover in the sum of $4622.02.

Defendant raises five points upon which he relies for reversal:

(I) That the trial court's findings of fact numbered 9, 17, 19 and 20, and conclusions of law numbered 9 and 11, are materially inconsistent, irreconcilable and ambiguous.

(II) That the trial court erred in refusing to grant defendant's requested findings of fact numbered 8 and 13, and in failing to make express findings of fact and conclusions of law as to the actual amount of offset in favor of defendant for the furnishing of groceries, electricity, milk, water, fuel, and housing for plaintiffs, and generally out of funds held by defendant.

(III) That it was error for the trial court to refuse defendant's requested finding of fact number 11 allowing defendant an offset for items of clothing purchased by plaintiffs in the amount of $173.12.

(IV) That the trial court's finding of fact number 19, as it purports to award defendant an offset for gasoline furnished plaintiffs, is erroneous and inadequate in view of the undisputed evidence.

(V) That the trial court erroneously concluded that plaintiffs were entitled to recover in full for monies advanced by plaintiffs to defendant in the amount of $1826.-05, upon the theory that the monies given defendant by plaintiffs were, to a substantial degree, expended for the use and benefit of plaintiffs and their family.

Under point I defendant contends that certain findings of fact and conclusions of law made by the trial court covering defendant's claimed offsets were materially ambiguous, inconsistent, conflicting and irreconcilable. Defendant also objects to the designation of the itemized items amounting to $115.28 as the "total" offset allowed, contending that this conflicts with the finding made that Oliver Allsup's services were of a reasonable value of $2400, "taking into account benefits received," etc. He urges that there was no specific finding of the value of these benefits and that the phrase in the finding that the pickup truck was purchased from "monies advanced at least in part by the plaintiffs," is vague.

There is no merit in defendant's contentions. We have carefully considered the findings of fact and conclusions of law made by the trial court and are of the opinion that, when they are read together in context, any seeming inconsistencies and ambiguities are reconciled. Any ostensible doubt must be resolved to support the judgment. Hay v. New Mexico State Highway Department, 66 N.M. 145, 343 P.2d 845; Rice v. First Nat. Bank in Albuquerque, 50 N.M. 99, 171 P.2d 318.

There is likewise no merit in defendant's contentions under points II, III, IV and V. All of the requested findings of fact concerned items of offset claimed by defendant. The trial court granted defendant both a general offset for housing, food, heat and electricity, and a specific offset covering certain personal items for which defendant paid. Other items were not proven to the satisfaction of the court. The general offset was covered by finding number 12, in which the trial court found that Oliver Allsup's services:

"*  *  *  are and were of a reasonable value of $2,400.00, taking into account benefits received by the Plaintiff and his family from the use and occupancy of the ranch-house of the Defendant and the benefit derived by the Plaintiff and his family on account of food, supplies, provisions and so forth made available to them and used by them while occupying said ranch-house."

It is true that the evidentiary facts covering each item of account are not set forth; however, we hold that all ultimate facts necessary to determine the issues in this case were found by the trial court. Sec. 21–1–1(52) (B) (2), N.M.S.A., 1953 Comp., Rules of Civil Procedure; Edward H. Snow Development Company v. Oxsheer, 62 N.M. 113, 305 P.2d 727; Goodwin v. Travis, 58 N.M. 465, 272 P.2d 672; Industrial Supply Company v. Goen, 58 N.M. 738,

276 P.2d 509; and Christmas v. Cowden, 44 N.M. 517, 105 P.2d 484.

There is substantial evidence in the record to support finding number 12 and the other findings made by the trial court. The trial court's finding on disputed fact questions, when supported by substantial evidence, is conclusive on appeal. Peugh v. Clegg, 68 N.M. 355, 362 P.2d 510. The trial court refused to make other findings. Thus, requested findings of fact and conclusions of law which were in conflict with those specifically found by the trial court were properly denied. Clodfelter v. Reynolds, 68 N.M. 61, 358 P.2d 626; Hines v. Hines, 64 N.M. 377, 328 P.2d 944; Alexander v. Cowart, 58 N.M. 395, 271 P.2d 1005; Gorman v. Boehning, 55 N.M. 306, 232 P.2d 701, 26 A.L.R.2d 868; and Wedgwood v. Colclazier, 55 N.M. 32, 226 P.2d 99.

Where a case is tried by the court without a jury, the trial court is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. Luna v. Flores, 64 N.M. 312, 328 P.2d 82; Chesher v. Shafter Lake Clay Co., 45 N.M. 419, 115 P.2d 636. The record discloses that the trial court evidently refused to believe much of defendant's testimony. This the trial court had the right to do. Wilson v. Schermerhorn, 56 N.M. 512, 245 P.2d 845. Other requested findings of fact of defendant are not supported by the evidence.

■ Defendant also urges that the burden of proving each item of offset rests upon plaintiffs as part of their general proof of the reasonable value of their services, without which plaintiffs cannot recover. We do not agree. In a factual situation such as this, where there has been definite proof of a contractual relationship and where the defendant, through his own fault, has prevented the completion of the contract by material breach, we believe that the burden of proof rests on the defendant, who is the party claiming affirmative relief. This is particularly true in the instant case where all the financial transactions were handled by the defendant and where all records, if any, were in his possession. Since we regard defendant's claims as offsets, and indeed all parties so denominate them, we must invoke the fundamental rule necessarily underlying all our procedure that the party alleging and seeking affirmative relief has the burden of proof. Pentecost v. Hudson, 57 N.M. 7, 252 P.2d 511; and Kingsford v. Bennion, 68 Idaho 501, 199 P.2d 625.

■ This is a case involving restitution and, hence, of an equitable nature. As the Supreme Court of the United States said in Atlantic Coast Line R. Co. v. State of Florida, 295 U.S. 301, 55 S.Ct. 713, 79 L.Ed. 1451, in such cases the simple but comprehensive question is whether the circumstances are such that equitably the plaintiffs in the instant case should restore to defendant what they have received. We believe they should, and the trial court in the case before us has attempted to make restitution in conformity with the proof adduced. However, where there is a failure of proof covering certain items and where defendant is the wrongdoer, it seems only equitable and just that defendant should suffer any consequences thereof, rather than that plaintiffs be prevented from receiving any payment for services admittedly rendered at defendant's request and pursuant to the terms of their agreement. Justice requires that both parties be restored, as nearly as possible, to their original positions. In so doing, the general rule is that plaintiffs must restore any benefits received —in specie where possible, otherwise by crediting defendant with their reasonable value. Restatement of the Law, Contracts, Vol. II, § 349, p. 595; and Corbin on Contracts, Vol. 5, § 1114, p. 502.

■ Defendant also urges that plaintiff's, Oliver Allsup's, services should be recompensed at the rate for unskilled labor. In Campbell v. Smith, 68 N.M. 373, 362 P. 2d 523, 527, we quoted with approval from Restatement of the Law, Contracts, Vol. II, § 347, p. 587, as follows:

"c. If the plaintiff's performance is part of the very performance for which the defendant bargained as part of an agreed exchange, it is to be

valued, not by the extent to which the defendant's total wealth has been increased thereby, but by the amount for which such services and materials as constituted the part performance could have been purchased from one in the plaintiff's position at the time they were rendered. * * * "

This is in accord with the rule in other jurisdictions. See Parrish v. Tahtaras, 7 Utah 2d 87, 318 P.2d 642; Williston on Contracts, Rev.Ed., Vol. 5, §§ 1479, 1480 and 1485, pp. 4133 et seq.; and Mooney v. York Iron Co., 82 Mich. 263, 46 N.W. 376. To use the rate for unskilled farm labor would be to measure the reasonable value of Oliver Allsup's services by an erroneous yardstick. Allsup was more than a farm laborer. While under these circumstances, the contract in no way necessarily measures the value of his services, it does provide a guide to show us what the parties contemplated would be the nature of these services. Under its terms, both parties were co-partners, sharing equally in any profits received and both vitally concerned with the successful outcome of the business venture involved, i. e., the summer camp. It cannot be argued successfully that either party contemplated that Allsup would perform merely farm labor, nor would Space have made such a bargain. There was no shortage of farm laborers. This is shown by the proof adduced that the market rates for such labor varied from 75¢ to $1.00 an hour. Allsup, at the time the contract was made, was employed at a trade which paid him well in excess of this. He incurred sacrifices in moving to New Mexico. While the parties were related by marriage, it is unreasonable to suggest that either contemplated an unprofitable outcome of the venture. There is testimony in the record indicating that it was profitable and that their expectations were more than reasonable.

Did Oliver Allsup perform the duties contemplated? The trial court found, in finding of fact No. 7, in regard to the plaintiffs: " * * * they complied fully in all respects with the agreement entered into with the Defendant. * * * " There is ample support in the record for this finding.

The record is somewhat barren of proof concerning the customary, reasonable rate paid persons of Allsup's capabilities performing not only menial farm tasks but assuming, in addition, all the responsibilities and liabilities of a co-owner or partner, with the ensuing worries and cares entailed therein, and exercising the needed initiative and management. Drawing, however, all possible inferences to support the judgment arrived at by the trial court, we do note certain testimony which would support a conclusion that Allsup's services were worth at least as much as he was earning at his usual skilled job. Allsup testified as follows:

"A. If I hadn't been working on the ranch, I would have been working at my trade and drawn the scale, [$2.65 per hour] and due to the fact that Jack wanted me to stay there and help him on that ranch so he could get away and contact people that we needed to contact for the summer business, I stayed there and took care of the ranch and did this work and tended to the business while he could get away. He couldn't hire anybody that would take care of the ranch—rather, take care of the business, these people that came to talk to us about the business and do the work, and that was the reason I stayed there and did all the work.

\*     \*     \*     \*     \*     \*

"Q. Now, Mr. Allsup, the times you took these jobs with outside contractors, was that your idea or was that Mr. Space's idea or both of you? A. Well, it was mostly Jack's. We needed money and he advised me to go out and work. I could make more than he could, hourly wage, and he wanted me to go out and work so we could have some capital to work on and do something with.

"Q. When you didn't work outside and you worked there on the ranch, was that at Mr. Space's request or your desire?

\*     \*     \*     \*     \*     \*

"A. It was Jack's.

"Q. Why was that? A. Well, Jack felt that I could stay there and take care of the ranch and work on the ranch and get a lot more done than anybody that wasn't vitally interested in it, \* \* \* and he said, well, he said, ' \* \* \* it's getting close to the time of the season,' he said, 'We've got a lot of work to do and we'd better just get it done.' and he had to be away a lot of the time, he was trying to contact people and see about the summer business.

"Q. Well, would it be fair to say that your working on or off the ranch was at his direction? A. Yes, sir."

In view of their great need for capital, to which both parties testified, it is only reasonable to infer that had Allsup been performing labor worth only 75¢ to $1.00 an hour, they would have hired common farm labor at that rate and let him continue to earn $2.65 an hour on construction jobs. This they did not do. While defendant Space denied that he would rather have had Allsup working on the ranch and stated that he wanted him to work out every day, the trial court rejected his testimony, which it had every right to do. Luna v. Flores, supra; Chesher v. Shafter Lake Clay Co., supra. This being true, and bearing in mind that this is really a case of restitution in which we are trying to restore plaintiffs,

as nearly as possible, to the status quo ante, we therefore hold that there is substantial evidence to support the finding of the trial court that Allsup's services were worth a net amount of $2400.00. We do this bearing in mind, also, that we must not penalize defendant for any lack of proof thereon but also remembering that plaintiff is the innocent party to whom compensation is due. Corbin on Contracts, Vol. 5, § 1112, p. 492.

Finally, defendant argues that the court found and allowed recovery to plaintiffs on account of money advanced to defendant of a larger amount than was sued for in their complaint. Evidence supporting the amount found to have been advanced was admitted without objection, and accordingly, it was not error for the court to treat the complaint amended in this regard to conform to the proof. Sec. 21–1–1(15) (b), N.M.S.A., 1953 Comp.; Luvaul v. Holmes, 63 N.M. 193, 315 P.2d 837; and George v. Jensen, 49 N.M. 410, 165 P.2d 129.

Finding no error, the judgment is affirmed.

It is so ordered.

MOISE and NOBLE, JJ., concur.

COMPTON, C. J., and CARMODY, J., not participating.