Bujac v. Wilson, 27 N. M. 105.

[No. 2485. March 2, 1921.]

[Rehearing Denied March 23, 1921.]

## In re CARDONER'S ESTATE.
## BUJAC v. WILSON.

### SYLLABUS BY THE COURT.

A claim against the estate of a deceased person by an attorney for a retainer, alleged to have been agreed to between the decedent, in her lifetime, and the attorney, cannot be maintained upon the uncorroborated testimony of the attorney, but, under the requirements of section 2175, Code 1915, there must be produced some independent evidence which in and of itself tends to corroborate the claimant as to the making of the agreement for the retainer.

Appeal from District Court, Bernalillo County; Hickey, Judge.

Proceeding by E. P. Bujac for the allowance of a claim against the estate of Aline Mathilde Julia Bouvard Cardoner, deceased, opposed by Joseph R. Wilson, as executor. Judgment for claimant, and the executor appeals. Reversed and remanded, with directions.

A. B. McMillen, of Albuquerque, for appellant.

Marron & Wood, of Albuquerque, for appellee.

### OPINION OF THE COURT.

PARKER, J. A claim was filed against the estate of the deceased by the appellee for the sum of $3,692.85. The proceeding resulted in judgment allowing the claim for the sum of $2,952.85. In order to justify the allowance of this claim against the estate it was necessary for the court to find that appellee had been employed by the decedent in her lifetime at an agreed retainer of $3,500 and expenses in the prosecution of certain litigation which she had both in this country and in Spain. The testimony by the appellee was that this contract was oral, and that no one else was present at the time of the making of the contract. He sought to corroborate his testimony to meet the requirement of sec-

tion 2175, Code 1915, which requires corroboration in case of suits against the estates of deceased persons where the claim depends upon claimant's own testimony in respect of any matter occurring prior to the death of the decedent. The testimony put forward by the appellee as corroboration is a power of attorney executed by the decedent appointing appellee her attorney in fact, with power to prosecute the legal business contemplated between the parties. This power of attorney is evidence of the appointment of appellee as the attorney of the decedent, but in it nowhere is mentioned anything concerning the amount of compensation to be received by him, or the time and manner of payment thereof. This clearly is not corroboration of the fact that there was an agreed retainer of $3,500. Appellee also relies upon a letter written by himself to the decedent, in which he asks her to send $1,000, together with another small item for expenses, which he would apply partly on expenses and partly as a retainer. To this letter the decedent replied, stating that she was, in accordance with his request, mailing him a check for the amount requested. The most that can be said for these two letters is that the decedent recognized the justice of a claim for a retainer, but it makes no mention of the retainer, and fails to reach the point at issue so as to corroborate the testimony of the appellee. Appellee likewise relies for corroboration upon the testimony of Judge Charles R. Brice, but an examination of that testimony discloses that it in no way corroborates him. Judge Brice was not present at the time of the alleged employment of the appellee, and knows nothing about the terms of any such employment. He does testify that in Albuquerque he met the decedent for the first and only time, and during a conversation of a general character, which was had between the witness and the decedent, the subject of appellee going to Spain to attend to her business was mentioned, as well as his employment to collect

certain claims against a Mr. Wilson, who resided in Philadelphia. His testimony discloses that at that time the employment was prospective and had not yet been consummated, and the witness did not undertake to say that he knew anything about the terms of the employment. It thus appears that there was no corroboration of the vital fact necessary to sustain this judgment, namely, that the decedent employed the appellee and agreed to pay him $3,500 as a retainer. The proof of that fact rests solely on appellee's testimony.

Section 2175, Code 1915, was enacted in 1880, and has remained in the same form ever since that time, and is as follows:

"In a suit by or against the heirs, executors, administrators or assigns of a deceased person, an opposite or interested party to the suit shall not obtain a verdict, judgment or decision therein, on his own evidence, in respect of any matter occurring before the death of the deceased person, unless such evidence is corroborated by some other material evidence."

This section has been many times before the territorial court and this court for consideration. It was first considered in Gildersleeve v. Atkinson, 6 N. M. 250, 27 Pac. 477. In that case the question presented was whether the purchase price of an interest in a land grant had been fully paid by the vendee during his lifetime. Gildersleeve, the vendor, claimed that the vendee never fully paid the purchase price for the conveyance of his interest in the land grant, and that he, the decedent, and his administratrix, owed him the sum of $10,000 as a portion of said purchase price. Objection was made to the claim against the administratrix upon the ground that the testimony of the claimant was not corroborated. In order to meet this requirement Gildersleeve produced a witness, who testified that he at one time sought from Atkinson an option on the land grant, and that Atkinson told him that if anything might occur, or would occur, he should see Mr.

Gildersleeve about it, who was interested with him in the Anton Chico grant. Gildersleeve further produced Judge Henry L. Waldo as a witness, who testfied that in a conversation with Atkinson he said to Atkinson that Gildersleeve claimed that Atkinson had agreed to divide the profits on the sale of the grant. Gildersleeve further produced a letter from Atkinson to the effect that in event of a sale of the land grant he would allow Gildersleeve reasonable attorney's fees for his services in connection with the title to the grant. The court analyzes the effect of each one of these items of proof, and shows conclusively that they failed to amount to any corroboration of the claim made by Gildersleeve that there was an unpaid balance of $10,000 upon the purchase price of the land grant. After a lengthy discussion of the different authorities on corroboration in the various phases of legal procedure, such as the corroboration of an accomplice, the attesting witnesses to wills, the corroboration of the complainant necessary to overcome a sworn answer in chancery, and necessary to establish perjury, the court points out that corroborating evidence in those classes of cases is not of the technical kind contemplated by the statute, but is evidence to overcome what would otherwise be a balance or equilibrium in the state of proof, or to aid the credibility of a witness. The court points out that under this statute this is not the kind of corroboration contemplated, and announces its definition of the kind of corroborative evidence so required as follows:

"Corroborating evidence is such evidence as tends, in some degree, of its own strength and independently, to support some essential allegation or issue raised by the pleadings testified to by the witness whose evidence is sought to be corroborated, which allegation or issue, if unsupported, would be fatal to the case; and such corroborating evidence must of itself, without the aid of any other evidence, exhibit its corroborative character by pointing with reasonable certainty to the allegation or issue which it supports. And such evidence will not be material unless the evidence sought to be corroborated itself supports the allegation or point in issue."

In other words, the court held that the kind of corroboration contemplated by the statute is not corroboration of a general character calculated to aid the credibility of the witness, but it is such evidence as, in and of itself, tends to establish the essential fact necessary to a recovery. The next case in which this statute was referred to is Byerts v. Robinson, Administratrix, 9 N. M. 427, 54 Pac. 932. In that case the maker of a promissory note attempted to show, as against the administratrix of the estate, that he had paid a certain note during the life-time of the payee. He offered evidence to corroborate him in this matter, which was for some reason excluded by the court below, and the case was reversed for this reason. The court, however, cites and relies upon Gildersleeve v. Atkinson, supra.

In Johnson v. Baca, 13 N. M. 338, 85 Pac. 237, the defendant sought, as against the plaintiff administratrix, to attach conditions to a promissory note not appearing upon the face thereof. The court held that this could not be done for the reason, not only that the testimony offered varied the terms of the note sued on, but that the evidence of the defendant was not corroborated as required by this section.

In Joseph v. Catron, 13 N. M. 202, 81 Pac. 439, 1 L. R. A. (N. S.) 120, the question was not involved, but the court referred to the statute as standing in the way of a recovery without corroboration upon a new trial which was awarded.

In Gillett v. Chavez, Administrator, 12 N. M. 353, 78 Pac. 68, the claimant against an estate testified that there had been a settlement of the partnership affairs of himself, the decedent, and one other, and an account stated upon which he sought to recover against the estate. He was not corroborated in this statement, and it was held by the court that no recovery could be had for this reason.

In Childers, Executrix, v. Hubbell, 15 N. M. 450, 110 Pac. 1051, the plaintiff sought to recover for money paid, laid out, and expended to and for the use of the decedent. The plaintiff held two checks of the decedent covering the amount sued for, and it was claimed that these checks amounted to corroboration of the testimony of the plaintiff, that he had paid, at the instance of the decedent, the sum of money represented by the checks. The court held that this testimony was entirely insufficient by way of corroboration.

In Radcliffe v. Chaves, 15 N. M. 258, 110 Pac. 699, the plaintiff had been the attending physician of the decedent, and made claim against the administrator for the value of his services. The physician produced corroboration of his testimony as to his services to the decedent by witnesses, who testified to the rendition of the services, and he produced his book of account, showing the various items of charge against the decedent. This was held properly to be sufficient corroboration.

In National Rubber Supply Co. v. Oleson, 20 N. M. 624, 151 Pac. 694, the question was whether a certain shipment of goods was an absolute sale, or whether the same was conditional. The evidence relied upon for corroboration of the witness who had testified that the sale was conditional was a notation in the bill of sale as follows: "Ship January 1st." This notation was held to be equivocal, and not to corroborate the witness. A considerable review of some Canadian authorities' is had in the case, but the case of Gildersleeve v. Atkinson is adhered to, and all of the preceding cases in this jurisdiction were cited.

In Union Land & Grazing Co. v. Arce, 21 N. M. 115, 152 Pac. 1143, the grantor testified that a certain deed purporting to have been executed by him was a forgery. In corroboration of that testimony the defendant put his wife upon the stand, and she

testified that her alleged signature to the deed was likewise a forgery, and one of the attesting witnesses was called and testified that he did not witness the execution of any such instrument. We held that these facts were corroboration of the testimony of the alleged grantor that he had never executed the deed. The Canadian cases are reviewed, where, in some of them, some very loose language is used to the effect that a statute almost identical with ours requires nothing more than corroboration of the witness as to his credibility rather than corroboration of the fact essential to a recovery. In that case we held that the testimony of the wife and the attesing witness denying their signatures was circumstantially corroborative of the testimony of the alleged grantor in which he denied the execution of the instrument. In that case we adhered to the principle announced in the Gildersleeve-Atkinson and National Rubber & Supply Co.-Oleson Cases referred to above. We have been referred to a case from 45 Nova Scotia, 62, In re Estate of C. E. Kaulbach. In that case a claim was filed against the estate for $500 for services as publisher of a newspaper under a contract. It was necessary for the claimant, in order to recover, to establish that he had delivered to the employer the subscription list of the subscribers to the newspaper. The employer had died, and the same question arose in regard to his recovery against the estate of the deceased person upon his uncorroborated evidence. The Canadian cases are reviewed, but the Nova Scotia court holds that the kind of corroboration required is such as is pointed out in Gildersleeve v. Atkinson, supra.

It seems clear upon a review of our previous cases that the doctrine announced in the Gildersleeve-Atkinson Case has never been departed from. The corroboration required is not the general corroboration of the witness as to his credibility, but it is

some form of evidence which tends, in and of itself, to establish the essential fact necessary to a recovery. This may be done circumstantially in case direct evidence is not available, as we held in the Union Land & Grazing Co. Case. But in the case at bar not a single word of testimony and not a single line of written evidence reaches the essential point necessary for the plaintiff to recover, namely, Did the decedent contract with him for a retainer of $3,500?

In may be said in closing that this may be an unwise rule. It is so suggested by Mr. Wigmore in his work on Evidence (3 Wig. on Ev. § 2065), where he points out that a claimant against an estate, although the court believes absolutely in his testimony and feels sure that he ought to recover, as we feel free to say we do in this case, is nevertheless precluded by an arbitrary rule of law from having what he is justly entitled to. If the rule is bad in policy, it is for the. Legislature, and not the court, to modify it. The doctrine so firmly established as to the true construction of the statute is undoubtedly sound, and must be adhered to.

It follows from all of the foregoing that the judgment of the court below was erroneous, and should be reversed, and the cause remanded, with directions to proceed in accordance herewith; and it is so ordered.

ROBERTS, C. J., and RAYNOLDS, J., concur.