481 P.2d 698

R. J. GASKIN, Trustee for De Vargas Development Company (N. S. L.) formerly a New Mexico Corporation et al., Plaintiffs-Appellees,

v.

Payne S. HARRIS and Soliska R. Harris, Defendants-Appellants.

No. 9027.

Supreme Court of New Mexico.

Jan. 25, 1971.

Rehearing Denied March 10, 1971.

Catron, Catron & Donnelly, Santa Fe, for defendants-appellants.

Stephenson & Olmsted, Santa Fe, for plaintiffs-appellees.

OPINION

McMANUS, Justice.

Plaintiffs brought suit in the District Court of Santa Fe County to enjoin the defendants from constructing on their residential property a structure alleged to be in violation of an architectural restriction applicable to the property. The court entered judgment ordering removal of the offending structure, a swimming pool enclosure.

The plaintiffs, except for Mr. Gaskin who is successor to the interests of the original subdivider, are the owners of lots within the De Vargas Development Company Subdivision No. 2, a residential development in Santa Fe. The defendants are the owners of a lot within the same subdivision, on which lot they constructed the swimming pool cover in question. It is likewise undisputed that all of the property in the subdivision is subject to certain restrictive covenants containing building restrictions, the material parts of which provide:

"FIRST: That no building whatever except a private dwelling house with the necessary outbuildings, including a private garage, shall be erected, placed or permitted on said premises or any part thereof, and said dwelling house per-

mitted on said premises shall be used as a private residence only * * * ; and said dwelling house and necessary outbuildings shall be in the style or form or appearance known as the Old Santa Fe or Pueblo-Spanish style of architecture; * * *.

"IT IS UNDERSTOOD AND AGREED that said covenants on the part of the grantee herein, shall attach to and run with the land hereby conveyed, and the party of the first part (the Company) or any owner of adjacent or abutting premises, shall have the right to enforce compliance with said covenants by injunction, or other legal proceedings. * * *"

The defendants were in the process of constructing a swimming pool enclosure on their property which was visible from outside their property, and from the plaintiffs' lots. The plaintiffs complained that this structure violated the restrictive covenants of the deeds to the subdivision as it did not in any manner conform to the "Old Santa Fe or Pueblo-Spanish" style of architecture required by the covenants. Instead, the pool enclosure was in a modern style variously described as being of an oriental or pagoda style, but certainly in no way resembling the adobe style known to Santa Fe.

In their Point 1, the defendants refer to change of condition as to architectural styles in their subdivision and the relative hardships that would be imposed upon them if they should be ordered to remove the structure in question. Yet, as to the alleged change of conditions, even the defendants' own architect, Plettenberg, conceded that the homes within the subdivision, even if not complying exactly with the definition of "Old Santa Fe or Pueblo-Spanish style of architecture," were of a consistent and uniform type of construction:

"Q In other words, these were quite consistent, quite uniform, what you chose to characterize as violations, in other words, the houses, whereas they don't conform to what you consider to be Old Santa Fe or Pueblo-Spanish, so at least conform with one another?

"A Yes, they do."

This testimony really does not show a "change" of conditions in the true sense of the phrase. All of the expert witnesses did however state that the structure involved was in violation of the architectural restriction applicable to this subdivision. Two of the expert witnesses testified, in part, as follows:

"Q Mr. Hill, in reference to the protruding addition, the so-called second story addition, if you will, that which protrudes above the main structure, in your professional opinion is the second story structure included in any way, shape or form in the terms of art Old Santa Fe style or Spanish pueblo?

"A I would say definitely not because the method of framing, the use of materials, such as the enclosing Fiberglas, plastic materials, are certainly far removed from what one would construe as being Old Santa Fe style."

Mr. Walker testified:

"Q Now, Mr. Walker, referring to this structure you have sketched on this Exhibit Thirteen and your view of it in your professional opinion as an architect, does it conform to either of the styles of architecture we have mentioned that is to say Old Santa Fe or Spanish pueblo? Now, I refer to the part which rises up above the main building only?

"A I would not consider the upper section in either of those categories."

The Historical Zoning Ordinance of Santa Fe, Sec. 28-43.6(a), Santa Fe City Code, was referred to during the trial and it was agreed that it was the only document containing a definition of "Old Santa Fe style" in writing. The trial court was the author of this ordinance and in his

findings of fact in this cause said that except for the defendants' property, all lots in the subdivision " * * * have been improved with buildings in substantial conformity with the Old Santa Fe or Pueblo-Spanish styles of architecture." While it is true that this Court has held, in a case involving medical testimony, that uncontradicted evidence is conclusive upon the court as a trier of the facts, see Ross v. Sayers Well Servicing Co., 76 N.M. 321, 414 P.2d 679 (1966), it is our opinion, considering the facts in this case as to the evidence presented by the expert witnesses and the aesthetic nature of the issues, that the trier of the facts may take the whole panorama into consideration, including his own knowledge of the area. Consequently, in this cause the fact finder may reject expert opinion evidence. See Van Orman v. Nelson, 78 N.M. 11, 427 P.2d 896 (1967).

In their briefs and arguments before this Court, the defendants emphasized that they were not asking the court to extinguish the architectural restriction contained in the covenants but only not to enforce it in this case. In Montoya v. Barreras, 81 N.M. 749, 473 P.2d 363 (1970), the plaintiff sought to exclude residential restrictions from only the one lot owned by plaintiff in said subdivision. This Court held that absolution as to some, but not all, of the lots is not a valid construction of an instrument containing covenants where the language of the instrument manifests an intent for orderly neighborhood development. In the instant case the defendant would have the architectural restriction removed from his lot, while leaving the restriction on the rest of the subdivision. This cannot be done.

Finally, the defendants would argue relative hardship in that they had no actual notice of the restrictive covenants from the time they bought their lot, until after the swimming pool cover was substantially erected. Therefore, they contend that the trial court committed reversible error in failing to make findings to that effect as requested by the defendants. Yet, this Court has previously held, and we reaffirm the proposition, that it is not error to refuse requested findings of fact not material to the court's decision. State v. Pelletier, 76 N.M. 555, 417 P.2d 46 (1966); Middle Rio Grande Conservancy District v. Crabtree, 69 N.M. 197, 365 P.2d 442 (1961). In this case, the restrictive covenant does exist, and because of the aims and purposes of such covenants, as discussed above, the relative hardship to the defendants is far outweighed by the benefits to the community affected.

The judgment of the trial court is affirmed.

It is so ordered.

COMPTON, C. J., and TACKETT, J., concur.