595 P.2d 401

**Bert Michael GEARHART,**
**Plaintiff-Appellant,**

v.

**EIDSON METAL PRODUCTS, Employer,**
**and Sentry Insurance Co., Insurer,**
**Defendants-Appellees.**

**No. 3603.**

Court of Appeals of New Mexico.

Feb. 6, 1979.

Rehearing Denied Feb. 16, 1979.

Writ of Certiorari Denied March 14, 1979.

Leof T. Strand, Albuquerque, for plaintiff-appellant.

Mark J. Klecan, Klecan & Roach, P. A., Albuquerque, for defendants-appellees.

OPINION

HENDLEY, Judge.

Plaintiff appeals a workman's compensation award. He contends that the trial court erred in (1) finding that he had a 5 percent scheduled injury impairment but was not disabled, (2) finding that plaintiff would not require future medicals, (3) refusing to assess certain costs against defendant, and (4) awarding attorney fees in the amount of $200.

*Scheduled Injury.*

The trial court found that plaintiff had suffered an injury to the elbow resulting in a 5 percent impairment of the elbow (§ 52–1–43(B), N.M.S.A.1978), but that he was not totally or partially disabled, pursuant to § 52–1–41 or 42, N.M.S.A.1978.

█ Viewing the evidence and its logical inferences in the light most favorable to support the verdict (*Adams v. Loffland Brothers Drilling Co.*, 82 N.M. 72, 475 P.2d 466 (Ct.App.1970)), we find that a medical expert testified that plaintiff's pain was subjective and the pain did not hinder him from working regularly and, accordingly, plaintiff was not disabled and the condition was not chronic. Plaintiff's expert found plaintiff to have a 5 percent permanent impairment of his right upper extremity. The finding of the trial court was within the range of the testimony of the medical experts. It was for the trial court to resolve the conflict. *Martinez v. Universal Constructors, Inc.*, 83 N.M. 283, 491 P.2d 171 (Ct.App.1971).

*Future Medical Expense.*

Section 59–10–19.1, N.M.S.A.1953 (2nd Repl. Vol. 9, pt. 1), subsequently amended, see 52–1–49, N.M.S.A.1978, states as follows:

> *"Medical and related benefits—Artificial members.—A.* After injury, and continuing as long as medical or surgical attention is reasonably necessary, the employer shall furnish all reasonable surgical, physical rehabilitation services, medical, osteopathic, chiropractic, dental, optometry and hospital services and medicine, not to exceed the sum of forty thousand dollars ($40,000), unless the workman refuses to allow them to be so furnished."

\* \* \* \* \* \*

█ The trial court found that the plaintiff would not require any medical attention in the future for the injury sustained. Notwithstanding any language which may be construed to the contrary in *Gallegos v. Duke City Lumber Co., Inc.*, 87 N.M. 404, 534 P.2d 1116 (Ct.App.1975), we are of the view that the continuing medical and surgical attention for the injury cannot be terminated by the trial court. The right created by statute is for a period "continuing as long as medical and surgical attention is reasonably necessary." The trial court cannot restrict or terminate that substantive right.

Neither does *Hales v. Van Cleave,* 78 N.M. 181, 429 P.2d 379 (Ct.App.1967) preclude an award of medical or surgical attention which may arise in the future. *Hales* only prohibits the trial court from making a specific award of money for future medical or surgical attention.

*Costs.*

Plaintiff filed a cost bill for one medical expert and two lay witnesses in the trial court. He also requested costs in his Requested Findings of Fact and Conclusions of Law filed on March 27, 1978. Defendants' Requested Findings of Fact and Conclusions of Law filed on March 31, 1978, stated in part as follows:

> "29. The plaintiff's attorney failed to supply medical reports to the defendants' attorney, although those reports were requested on January 24, 1978 during the plaintiff's deposition (Page 38) and on February 4, 1978 (copy of letter attached).

> "30. This failure to supply medical records made it necessary for the defendants to file a motion to produce such records [filed February 27, 1978], and also made it necessary to depose Dr. Allan Wilson.

\* \* \* \* \* \*

> "32. The failure by the plaintiff's attorney to supply medical reports to the defendants precluded the defendants from making an offer, in writing, more than 30 days prior to trial." (Tr. 32)

The trial court made its Findings of Fact and Conclusions of Law on April 18, 1978, which were identical to those quoted above. The trial court's judgment was filed on April 18, 1978. Costs were not awarded.

■ There was no hearing on the issue of costs relative to the failure to furnish medical reports. Thus, Findings Nos. 29, 30 and 32 are not supported by the record. Plaintiff is awarded costs for the medical and lay witnesses. The trial court abused its discretion in not awarding such costs. *Hales v. Van Cleave, supra.*

*Attorney Fees.*

■ The trial court awarded plaintiff $200 in attorney fees. The awarding of attorney fees is within the sound discretion of the trial court and not reviewable absent an abuse. *Escobedo v. Agriculture Products Co., Inc.,* 86 N.M. 466, 525 P.2d 393 (Ct.App.1974).

In *Keyser v. Research Cottrell Co.,* 84 N.M. 173, 500 P.2d 997 (Ct.App.1972) this court held that § 52–1–54(D), N.M.S.A.1978, sets forth the elements which must be considered in awarding attorney fees and it is an abuse of discretion if the trial court fails to consider them. From the record we cannot determine what was considered by the trial court in awarding attorney fees.

■ In *Ortega v. N.M. State Highway Dept.,* 77 N.M. 185, 420 P.2d 771 (1966) our Supreme Court considered other issues as also being important. These included the length of the transcript of the proceedings in the trial court, the amount of the award, and the results. In the present case, injury and liability were fully contested. Plaintiff's attorney prepared and conducted a full trial on the merits, attended two depositions, prepared a motion to undertake discovery, and prepared proposed findings of fact and conclusions of law. Moreover, plaintiff was successful in receiving an award of compensation. From the above, it clearly appears that the trial court abused its discretion in awarding plaintiff attorney fees of only $200. To allow such a low award to stand would have a "chilling effect upon the ability of an injured party to obtain adequate representation." *Herndon v. Albuquerque Public Schools and Commercial Standard Insurance Company,* 92 N.M. 287, 587 P.2d 434 (1978).

The decision of the trial court on the award of attorney fees is reversed. Since the original trial judge is no longer on the court and given the factors which we have outlined above, we feel that we are in as good a position to set attorney fees as a new trial judge. Accordingly, we award plaintiff attorney fees for the trial in the amount of $1,000.

The judgment is affirmed as to plaintiff's award of compensation and is reversed as to costs, future medical attention and attorney fees. Plaintiff is awarded the sum of $1,500 attorney fees on appeal. *Schiller v. Southwest Air Rangers, Inc.,* 87 N.M. 476, 535 P.2d 1327 (1975).

IT IS SO ORDERED.

WALTERS, J., concurs.

SUTIN, J., concurs in result.

SUTIN, Judge (concurring in result).

*I concur in the result.*

A special concurring opinion is not read or relied upon by lawyers and district judges. It is a waste of space in New Mexico Reports and should not be written. If the Supreme Court grants certiorari, it will not be published. Generally, I write one to point out the idiosyncratic performance of trial lawyers and district judges, together with the tortuosities of appellate opinions.

*First, the district judge adopted the findings and conclusions requested by defendants.* The Supreme Court and this Court have heretofore remanded such a cause to the district court to make its own findings. Heretofore, I disagreed and still disagree. But when a district judge adopts the requested findings without reading and studying them, the trial lawyer often leads the judge astray. It was done in this case.

In Correspondence Opinions written in response to Memorandum Opinions submitted by my brethren, I have suggested a solution to this problem: (1) submit requested findings and (2) submit proper findings for the court to use with a change in verbiage. A district judge, long after a

trial, generally accepts any findings submitted by the successful party even without carefully reading them. It occurred in this case. Under these circumstances, a remand is necessary but impractical. The district judge no longer sits in office. A new trial granted would be a useless appendage. Plaintiff can seek an increase in the percentage of scheduled disability.

*Second, there was no evidence of partial permanent disability.* No such finding appears in the court's findings nor in the judgment. At the close of the case, comments were made, and for these comments, I applaud the district judge. He stated that he leaned toward plaintiff to give him some relief. He awarded plaintiff "partial permanent disability of five percent," and "if the Court's arithmetic is correct . . $1,010.88."

Partial disability is defined in Section 52–1–25, N.M.S.A.1978 as follows:

"[P]artial disability" means a condition whereby a *workman* * * * is unable to some percentage-extent to perform the usual tasks in the work he was performing *at the time of his injury and* is unable to some percentage-extent *to perform any work for which he is fitted* by age, education, training, general physical and mental capacity and previous work experience. [Emphasis added.]

The question put to Dr. Allan Wilson by plaintiff, reads:

Q. Doctor, do you have an opinion—*I will talk about impairment of function and not legal disability,*—Do you have an opinion as to the percentage extent that Bert suffers, percentage extent of functional impairment that Bert suffers as a result of the condition in his right elbow . . .?

A. It is my opinion that Bert has a five *percent permanent impairment* of his right upper extremity. [Emphasis added.]

The testimony of Dr. Wilson does not establish permanent partial disability. Seldom, if ever, is an expert witness asked the following questions:

In your opinion, is the workman wholly (or to some percentage-extent partially) unable to perform the usual tasks in the work he was performing at the time of the injury?

In your opinion, based upon the age, education, training, general physical and mental capacity and previous work experience, is the workman wholly (or to some percentage-extent partially) unable to perform any work for which he is fitted?

On cross-examination, plaintiff was asked these questions to which he made these answers:

Q. You are still working at this job with Bill Jay Construction Company [same type of work]?

A. Yes.

Q. And that, as with all the other previous job[s], involves essentially the same type of work that you have been doing all of your adult life, doesn't it?

A. Yes.

Plaintiff agreed that he was wholly able to perform the usual tasks in the work he was performing at the time of his injury, and wholly able to perform all work for which he was fitted by age, education, training, general physical and mental capacity and previous work experience.

Dr. Wilson was asked these questions to which he made these answers:

Q. Now Doctor, did you have an opinion, based upon reasonable medical probability on May 4, 1977, as to whether Bert Gearhart was able to return to work?

A. I did not feel that he could return to work at this point, no.

Q. *Did you subsequently okay his return to work?*

A. *Yes I did.* Basically we treated Bert on 5/4/77 and he returned to work on 5/18/77, and was at that point, essentially asymptomatic *and was discharged.* [Emphasis added.]

The trial court found that on May 18, 1977, plaintiff was released by Dr. Wilson as being fully recovered.

Dr. Jacob Bronitsky was asked this question to which he made this answer:

Q. Would you be able to express an opinion for us as to whether or not in your opinion Bert Gearhart is disabled to any extent?

A. I don't think he is disabled to any extent. He is able to do the heavy kind of work that he has been doing. I mean *if* he is having some discomfort, I would say, *if* I had to give a percentage, I would say about five percent. [Emphasis added.]

Furthermore, the court concluded:

4. The undisputed medical evidence was that the Plaintiff suffered from a 5% impairment of the right arm at the elbow.

    \*     \*     \*     \*     \*     \*

6. The Plaintiff is entitled to $1,010.88 as compensation benefits.

7. The Plaintiff is completely able to perform the type and amount of work which he was performing on February 10, 1977.

8. The Plaintiff is completely able to perform all work for which he is fitted by age, education and work experience.

9. The Plaintiff has suffered a schedule injury which has produced a 5% *impairment* of the right arm at the elbow, but such injury has *not* created any *disability*. [Emphasis by Court.]

If defendants had cross-appealed, we would have been compelled to deny plaintiff any compensation benefits. Defendants put in their requested conclusions that plaintiff was entitled to compensation benefits and yet was not disabled. This contradiction is explained by the comments made by the district judge at the close of the evidence, and defendants' desire to seek judgment.

This mishmash, hodgepodge and hogwash method of trying cases on the part of both parties does find favor with most appellate judges, but not with me.

However, I want to make my position clear. Merely because a workman is wholly able to perform his usual tasks does not per se mean that he is totally or partially disabled.

In my Correspondence Opinion in *Lopez v. Phelps Dodge Corporation*, No. 3505, filed September 19, 1978, cert. granted, November 11, 1978, I said:

Plaintiff drove a muck truck having a capacity of 85 to 100 tons of ore. He was divorced but he had custody of the children, three of whom had reached the age of 18, and three who had not. He wore a back brace during his employment. He was not paid compensation benefits and had to borrow money from a bank. He worked a midnight shift to 8:00 a. m. Many workmen will do slave labor to support a family notwithstanding disability as defined by law. The mere fact that he is employed full time does not bear on the percentage of his disability, if any.

    \*     \*     \*     \*     \*     \*

In the trial of a workmen's compensation case, "Plaintiff must establish that he was totally or partially unable to perform the work he was doing at the time of the injury." *Medina v. Zia Company*, 88 N.M. 615, 544 P.2d 1180 (Ct.App.1975). This does not mean that plaintiff must suffer the pangs of misery while doing the work. Plaintiff was able to perform his job on a full time basis with a back brace, pain and discomfort. . . .

"Slave labor" and "pangs of misery" suffered while performing work puts a workman in the category of disability under the Workmen's Compensation Act. This includes pain suffered which, in the opinion of a workman or an expert, falls within the definition of disability.

*Third*, in my opinion, this appeal was taken to provide for future medical expense, costs and attorneys fees. I concur with Judge Hendley. The considerations that enter into the matter of fixing attorney fees was stated in *Elsea v. Broone Furniture Co.*, 47 N.M. 356, 143 P.2d 572 (1943) and followed in *Michelson v. Michelson*, 89 N.M. 282, 551 P.2d 638 (1976). See *Marez v. Kerr-McGee Nuclear Corporation*,

No. 3487, filed December 19, 1978, Sutin, J., specially concurring.