620 P.2d 1292

**Anna CHAVIRA, Plaintiff–Appellant,**

**v.**

**GAYLORD BROADCASTING COMPANY and Reliance Insurance Company, their insurer, Defendants–Appellees.**

**No. 4473.**

Court of Appeals of New Mexico.

Oct. 28, 1980.

Lorenzo E. Tapia, Miguel P. Campos, Tapia & Campos, Albuquerque, for plaintiff–appellant.

Carlos G. Martinez, Shaffer, Butt, Thornton & Baehr, P.C., Albuquerque, for defendants–appellees.

## OPINION

WALTERS, Judge.

In this workman's compensation case, the trial court denied benefits and plaintiff appeals. Because the evidence of plaintiff's injury and disability is conceded and uncontradicted, we reverse. Other inconsistencies between the evidence and the result below, and between prior decisions, also require discussion.

Anna Chavira was a disc jockey at an Albuquerque radio station. On October 21, 1977 she suffered an injury to her left ear when she routinely answered the telephone at her work and a loud, high–pitched blast was transmitted through the receiver. There was evidence that she felt immediate pain, nausea, dizziness, and she bled from the ear. After a period of testing and observation, a specialist to whom she was referred by her family doctor found a fistula of the round window membrane in her inner ear and a leakage of inner ear fluid. In his opinion, the damage to the ear was most probably caused by the loud blast she received over the telephone.

Surgery was performed on January 19, 1978 and plaintiff's dizziness and problems with maintaining her balance cleared up considerably by May 22, 1978. In September 1978, however, she complained again of dizziness and unsteadiness which would cause her to lose her balance and almost make her fall. Her doctor diagnosed the condition as "a residual defect within the balance organ." He felt that the recurrent and persistent dizziness was "the more usual course" after one suffered injuries to the balance organ, and he was not surprised that her symptoms recurred in September. Miss Chavira complained even at the time of trial that any head or eye movements, particularly rapid movements, brought on sensations of vertigo, disorientation, and imbalance. The undisputed medical evidence was that she had sustained a slight permanent hearing loss from the injury, and that she could not return to her usual occupation as of the time her doctor last examined her in September 1978. At the time of trial he estimated her to be 100% disabled from performing any work that required quick and repetitive movements; prolonged reading, writing or driving; or stooping, bending or lifting efforts. The doctor suggested that of all the occupations "available to women in the country" she was probably permanently disabled from performing 50% of them and, in his opinion, she would require retraining to obtain future employment.

Plaintiff was off work from January 18, 1978 through February 6th while she was hospitalized. She then returned to work

doing what she described as lighter work, and was terminated on August 28, 1978.

The court found that plaintiff sustained an injury on October 21, 1977 during her employment; that she was not terminated because of unsatisfactory performance; that the "evidence does not establish required causal connection between the alleged injury and accident on October 21, 1977"; that she did not sustain a loss in earning capacity, was not disabled by the October 1977 accident, and was not entitled to compensation, medical benefits, rehabilitation, or attorney fees.

At oral argument, defendant conceded that plaintiff should have been awarded temporary total disability benefits for the period she was hospitalized from January 18th through February 7, 1978, payment for hospital expenses and the bills of Drs. Wasylenki and Hattler incurred as a result of the ear injury, and payment for the services of her attorney at trial and on appeal. We not only agree with defendant's concessions, but commend counsel for recognizing that the findings of the trial court are irreconcilable with the facts produced at trial, and internally. It is undisputed that plaintiff was injured on the job, incurred medical expenses, lost time from work while hospitalized, and suffered a permanent hearing impairment. The medical testimony was that she was "unable to perform some of the work for which [s]he was fitted." *Anaya v. New Mexico Steel Erectors, Inc.*, 94 N.M. 370, 610 P.2d 1199, 1202 (1980).

Defendant argues, however, that the trial court correctly determined that plaintiff was not disabled, pointing to her doctor's reports following the surgery regarding her progress toward recovery, her continuation as an employee at a higher salary until August of 1978, and her employer's denial of knowledge regarding her claims that she had to work longer hours and receive assistance from others to do the work she had been doing prior to the injury.

■ The finding that plaintiff did not suffer a loss in earning capacity is not determinative on the issue of disability. Although *Anaya v. New Mexico Steel Erec-*

*tors, Inc., supra,* indicated it was a factor to be considered, we believe that decision inadvertently relied on case law interpreting the earlier disability statute, and overlooked *Quintana v. Trotz Constr. Co.,* 79 N.M. 109, 440 P.2d 301 (1968), which pointed out that the 1963 amendment to §§ 59–10–12.18 and 59–10–12.19, N.M.S.A.1953 (now §§ 52–1–24 and 52–1–25, N.M.S.A.1978), "changed the primary test of disability from wage–earning ability to capacity to perform work as delineated in the statute."

■ The instant case presents some difficulty because there exist seemingly conflicting rules of appellate review. We are to consider the evidence and the inferences to be drawn therefrom in the light most favorable to support the trial court's findings. *Gearhart v. Edison Metal Prod.,* 92 N.M. 763, 595 P.2d 401 (Ct.App.1979). The credibility of the witnesses and the weight to be given their testimony is for the trier of the facts and not for the appellate court. *Mares v. City of Clovis,* 79 N.M. 759, 449 P.2d 667 (Ct.App.1968). Yet, if causal connection between the accident and the disability is established as an uncontradicted medical probability, that evidence is conclusive upon the fact–finder. *Ross v. Sayers Well Serv. Co.,* 76 N.M. 321, 414 P.2d 679 (1966); *Casaus v. Levi Strauss & Co.,* 90 N.M. 558, 566 P.2d 107 (Ct.App.1977); *Mares v. City of Clovis, supra.* However, medical evidence regarding the percentage of disability need not be accepted by the trial court if there is other competent evidence to refute it. *Lucero v. Los Alamos Constructors, Inc.,* 79 N.M. 789, 450 P.2d 198 (Ct.App.1969). Our review of the cases applying the *Lucero* rule seems to indicate, however, that "other competent evidence" refers only to other medical testimony. *See, e. g., Seal v. Blackburn Tank Truck Serv.,* 64 N.M. 282, 327 P.2d 797 (1958).

■ We can only conclude here that the trial judge disbelieved everything the claimant testified to regarding her disability. There is some justification for that reaction, if our conclusion is correct, be-

cause one of defendant's witnesses testified that plaintiff, some time after she had been terminated by defendant, had told the witness that she was not looking for work because she had been advised it "might have an effect" upon her workman's compensation claim.

However, a disabling injury resulting from the October 1977 incident has been conceded. The record shows that Miss Chavira had problems of dizziness and imbalance from the date of the accident and, at her initial visit arranged by her regular doctor with the specialist, Dr. Wasylenki, he suspected she was suffering a vestibular dysfunction. It was confirmed by an audiogram performed by another specialist to whom plaintiff was referred by Dr. Wasylenki, and plaintiff was found also to have a decrease in her speech discrimination abilities. Dr. Wasylenki at the same time observed objective evidence of her dizziness and vertigo. There is, therefore, uncontradicted medical evidence that not only was plaintiff totally disabled during the period of her hospitalization, but also that she suffered at least some partial disability prior to her hospitalization which was caused by "motion . . . reading, moving the eyes back and forth." All of those activities were required in plaintiff's occupation in October 1977, and she said she had received help in doing her job after October because of her inability to do the work by herself. Consequently, her testimony regarding her condition before surgery was performed, even if not believed by the trial court, was confirmed by medical evidence that was not contradicted. The resulting factual situation, therefore, is that the injuring accident was employment–related and not disputed; the causal connection of a disabling condition, that was medically seen to be present, was established; a compensable partial disability, not disputed, was claimed up to the time plaintiff's ear was operated on. *Casaus* and *Lucero, supra,* compel this acceptance of the facts as a matter of law. As an inevitable conclusion, therefore, plaintiff should have been compensated at no less than a partial temporary disability rate for that period.

■ The second anomaly in the lower court's disposition of this case is the total disregard of medical evidence regarding a slight but permanent hearing loss. So was the doctor's opinion of plaintiff's condition and the resulting degree of disability, and her need for rehabilitative training treated.

We recognize that the trier of fact must be free to determine the credibility of the witnesses, but the two witnesses—plaintiff and Dr. Wasylenki—corroborated each other's evidence and they were not contradicted by other evidence. Defendants presented no witnesses to counter plaintiff's personal and medical testimony that she was unable after August, 1978 to work at jobs requiring driving, reading, writing, bending or quick movements. Her employer only said that he was not aware of her limitations. He felt, assuming "a mild imbalance problem" that would be aggravated by the activities and movements described by her doctor, that she could program automation for taped operations, and could act as a public affairs director in the radio business. He conceded, however, that the work would require some of the movements her doctor said she was no longer able to do, and acknowledged that it would also require her to engage in considerable research, reading, and driving to gather material and prepare her programs.

The uncontradicted, *competent* evidence of her inability to function at occupations requiring any of those movements or efforts cannot be ignored. *Lucero; Casaus, supra.* It was medically shown that plaintiff was unable, at least to "some percentage–extent to perform the usual tasks in the work [s]he was performing at the time of the injury and is unable to some percentage–extent to perform any work for which [s]he is fitted by age, education, training, general physical and mental capacity and previous work experience." Section 52–1–25, N.M.S.A.1978.

The plaintiff did not request a finding of partial disability and it does not appear from the trial court's findings that the court considered *Anaya, supra,* as suggest-

ing that partial disability should be awarded if the facts upon which the court was concluded would support such an award, whether requested by the claimant or not. There being no decision on that issue, we remand the matter for the trial court's review of the evidence of partial disability before and after surgery, and for consideration of future rehabilitative treatment, reposing our reliance in the trial judge "to make a decision that is fundamentally fair to both parties." *Anaya, supra,* at 610 P.2d 1020. The statute, of course, grants future medicals as a matter of right, if related to the compensable injury. Section 52–1–49, N.M.S.A.1978.

The case is remanded for determination by the trial court of the percentage of partial disability following the injury and prior to surgery, if any; for entry of judgment against defendants for that amount and for total disability compensation during plaintiff's hospitalization; for allowance of medical and hospital expenses incurred in connection with the October 1977 injury; and for an award of allowance for any costs incurred by plaintiff and of a reasonable attorneys' fee for services at trial. The trial court shall also consider the award of some percentage of temporary and permanent partial disability in connection with her permanent hearing impairment and her inability to perform some of the work for which she is otherwise fitted, and as well as future medical and rehabilitation needs; and shall enter judgment on those considerations accordingly.

■ Since plaintiff is entitled to recovery of some compensation she is awarded $2,000 for services of her attorneys in this appeal. *Cf. Perez v. Fred Harvey, Inc.,* 54 N.M. 339, 224 P.2d 524 (1950).

ANDREWS, J., concurs.

SUTIN, J., concurring in part, dissenting in part.

SUTIN, Judge (concurring in part and dissenting in part).

I concur in the reversal based upon the concessions made by defendants. I dissent on the conclusion that plaintiff was entitled to a percentage of partial disability as compensation. The judgment below should be vacated and a new judgment entered which includes payment of compensation for total disability during hospitalization, the payment of doctor bills and a reasonable attorney fee for services rendered. This fee should be determined in accordance with *Fryar v. Johnsen,* 93 N.M. 485, 601 P.2d 718 (1979).

The trial court found that:

> \*   \*   \*   \*   \*   \*
>
> 2. On October 21, 1977 plaintiff sustained an injury to her ear drum caused by a loud noise on the telephone during her work with Gaylord.
>
> 3. Plaintiff continued to work for Gaylord from October 21, 1977 until August 28, 1978, her termination date . . . .
>
> 4. Plaintiff was not terminated because of failure to satisfactorily perform her work.
>
> 5. Plaintiff told her doctor that her dizziness was almost gone. On March 2, 1978 [four months later] she told him she has no dizziness whatsoever and that she was able to move, work and function normally.
>
> 6. The evidence does not establish required causal connection between the alleged injury and accident on October 21, 1977.
>
> \*   \*   \*   \*   \*   \*
>
> 9. Plaintiff was not disabled by the accident of October 21, 1977.
>
> 10. Plaintiff is not in need of any further medical treatment, rehabilitation or psychological treatment.
>
> \*   \*   \*   \*   \*   \*

Contrary to court findings, defendants voluntarily conceded the following facts:

> 1. . . . plaintiff was permanently [sic] [totally] disabled during the hospitalization period between January 19, 1978, through February 7, 1978;
>
> 2. . . . the medical treatment and bills of Dr. Waslenski and Dr. Hatler were necessary and reasonable; and

3. ... plaintiff's attorneys are entitled to reasonable attorney fees for services rendered at trial and for the Appeal.

As amended by these concessions, the trial court found that on October 21, 1977, plaintiff suffered an accidental injury within the scope of her employment and was totally disabled during her hospitalization but plaintiff was not disabled before or after her hospitalization.

A. *The only issue in this appeal is: Was Plaintiff disabled before and after her hospitalization?*

(1) *Before hospitalization.*

Between October 21, 1977, the date of injury, and January 19, 1978, the date hospitalization took place, plaintiff continued to do her work. On November 8, 1977, 18 days after her injury, she was examined by an ear, nose and throat specialist. He found that plaintiff was alert and rational; that her ear canals and ear drums appeared normal, and the middle ears were clear; that tuning fork tests were normal in both ears. There was no evidence of any nystagmus, a sign which one looks for as a result of abnormal reaction from the balancing organ. An audiogram test was made, a test of the threshold of hearing. He found that both ears had essential normal hearing at that time but he referred plaintiff to an audiologist. Based only upon the tests made by the audiologist on November 30, 1977, a diagnosis was made of a disturbance of a left balance organ of the left inner ear and a "strong possibility" of an existing fistula within the inner ear. A fistula is an opening from the inner ear into the middle ear with leakage of fluid. There was some kind of hearing impairment such as difficulty in understanding speech or in discriminating the spoken word. The audiologist did not testify. Neither was his report to the physician admitted in evidence. On January 19, 1978, surgery was performed.

The trial court disregarded the testimony of plaintiff. Absent the testimony of plaintiff, there is no evidence of any disability suffered by plaintiff up to the time of surgery.

(2) *After hospitalization.*

Plaintiff was discharged from the hospital on January 21, 1978. There were no post operative complications. On March 2, 1978, plaintiff had no dizziness, could function normally and had a very small amount of loss of hearing. She did excellent work and never complained of having any physical problems performing her job. She was able to work until her job terminated on August 28, 1978. Absent the testimony of plaintiff, there is no evidence of any disability suffered by plaintiff after surgery.

"Impairment of physical function is not enough to justify an award under our Workmen's Compensation Act; there must be some disability, or inability, to perform work." *Anaya v. New Mexico Steel Erectors, Inc.,* 94 N.M. 370, 610 P.2d 1199, 1201 (1980). Before and after surgery, plaintiff was able to perform the work she was engaged in at the time of the injury and the work for which she was fitted.

B. *The trial court can accept or reject testimony.*

Does the trial court have the right to disregard all or any portion of the testimony of plaintiff and her physician? The views taken by our courts leave me in a quandary.

It has been uniformly held that "[i]t is the function of the trier of facts to weigh the evidence and determine the credibility of witnesses and we will not do this on appeal." *McCauley v. Ray,* 80 N.M. 171, 176, 453 P.2d 192 (1968). This rule is elementary. *Chesher v. Shafter Lake Clay Co.,* 45 N.M. 419, 115 P.2d 636 (1941). When a district judge determines the credibility of a witness and gives no weight to the evidence, what is the duty of an appellate court?

*Morris v. Cartwright,* 57 N.M. 328, 332, 258 P.2d 719 (1953) arbitrarily said:

... This evidence is undisputed and must be accepted as true....

*Martinez v. Archuleta,* 64 N.M. 196, 199, 326 P.2d 1082 (1958) arbitrarily said:

... The trial court is not required to accept the sworn testimony of a witness as true. . . .

*Allsup v. Space*, 69 N.M. 353, 361, 367 P.2d 531 (1961) arbitrarily said:

... The record discloses that the trial court evidently refused to believe much of defendant's testimony. This the trial court had the right to do. . . .

*State v. Chavez*, 78 N.M. 446, 447, 432 P.2d 411 (1967) said citations omitted:

As a general proposition, unimpeached and uncontradicted sworn testimony must be accepted as true. If, in this case, the evidence is unimpeached and uncontradicted, the general rule is applicable and findings which disregard such evidence are lacking in support.

*Medler v. Henry*, 44 N.M. 275, 283, 101 P.2d 398 (1940) said:

[T]he testimony of a witness, whether interested or disinterested, cannot arbitrarily be disregarded by the trier of the facts; but it cannot be said that the trier of facts has acted arbitrarily in disregarding such testimony, although not directly contradicted, whenever any of the following matters appear from the record:

(a) That the witness is impeached . . . .

(b) That the testimony is equivocal . . . .

(c) That there are suspicious circumstances . . . .

(d) That legitimate inferences may be drawn . . . that contradict or cast reasonable doubt upon the truth or accuracy of the oral testimony.

*Avoiding New Mexico authorities, Waters v. Blocksom*, 57 N.M. 368, 370–1, 258 P.2d 1135 (1953) said:

... But the trial court was not required to accept as true the sworn testimony of the witness. [Citations omitted.] The general rule that uncontradicted testimony cannot be disregarded by the court, is subject to many qualifications and exceptions. As it is the duty of the trial court to determine what credit and weight shall be given to the testimony, an appellate court will not disturb a finding or conclusion denying credence, unless it appears that there are no facts or circumstances which at all impair the accuracy of the testimony. [Citations omitted.] . . . .

*Hales v. Van Cleave*, 78 N.M. 181, 186, 429 P.2d 379 (Ct.App.1967) said:

Even though the testimony of the plaintiff was not contradicted, the trial court could still determine his credibility from all the facts and circumstances, as well as his demeanor on the stand, his interest or bias shown by his testimony, his conduct, the inherent probability or improbability of his statements, and from all these matters determine the truthfulness of his testimony. [Citations omitted.] Even though we may have made a finding contrary to that of the trial court, an appellate court will not substitute its judgment for that of the trial court who heard all the evidence and observed the demeanor of the witness. . . .

*Beacon Supply Company v. American Fiber Corp.*, 75 N.M. 29, 35, 399 P.2d 927 (1965) said:

... Whether the testimony of a witness is so impeached as to render his testimony unworthy of belief is a matter for the trial court to determine. [Citation omitted.] This court will not substitute its judgment for that of the trial court as to credibility of witnesses. . . .

Many more examples can be shown. Critical comment will not aid in the adoption of a rule proper in all cases. A uniform rule was adopted in U.J.I. 17.5 which applies the *Hales* rule. It reads:

You alone are the judges of the credibility of the witnesses and the weight to be given to the testimony of each of them. In determining the credit to be given any witness you may take into account his ability and opportunity to observe, his memory, his manner while testifying, any interest, bias or prejudice he may have, and the reasonableness of his testimony considered in the light of all the evidence in the case.

The various rules adopted appear to be a convenient method used by an appellate court to arrive at what it believes to be a

fair and reasonable result. Better it would be to repose our reliance in the trial judge "to make a decision that is fundamentally fair to both parties" before judgment is entered. A uniform rule should be followed absent any indication in the record of bias, prejudice, interest, illness of a district judge, or any other factor that obstructs a fair decision.

A trier of the fact is not bound to believe a fact simply because a witness has testified on the matter. The whole burden of determining the truth of a fact rests within the conscience of a district judge, who alone considers the demeanor and conduct of the witness. An appellate court that reads from a cold record cannot precisely determine the truth of a fact stated by a witness.

Until such time as a uniform rule is adopted, the solution to this perplexing problem rests with a procedural innovation. The parties shall state, within the requested findings or conclusions, the reasons for the adoption or rejection of the witness's testimony. The district court shall, thereupon, adopt or reject the requests made and state the reasons.

It is established law that the opinion of an expert, although uncontradicted, is not conclusive of the fact in issue. The fact finder may reject expert opinion evidence in whole or in part. *Lopez v. Heesen*, 69 N.M. 206, 365 P.2d 448 (1961); *Van Orman v. Nelson*, 78 N.M. 11, 427 P.2d 896 (1967); *Gaskin v. Harris*, 82 N.M. 336, 481 P.2d 698 (1971); *Lucero v. Los Alamos Constructors, Inc.*, 79 N.M. 789, 450 P.2d 198 (Ct.App. 1969); *Phillips v. Smith*, 87 N.M. 19, 528 P.2d 663 (Ct.App.1974); *Reid v. Brown*, 56 N.M. 65, 240 P.2d 213 (1952).

### C. *Corroboration is a valid test.*

There is another method of sustaining or rejecting the findings of a trial court—corroboration of testimony with evidence that aids in the determination of the credibility of the witness. The law developed under an old statute, since repealed, which required corroborative evidence. See *Bujac v. Wilson*, 27 N.M. 105, 196 P. 327 (1921); *National Rubber Supply Co. v. Oleson &*

*Exter*, 20 N.M. 624, 151 P. 694 (1915); *Gildersleeve v. Atkinson*, 6 N.M. 250, 27 P. 477 (1891); 32A C.J.S. *Evidence* § 1016 (1964).

*Gildersleeve* defined "corroborating evidence" as follows:

> ... Corroborating evidence is such evidence as tends, in some degree, *of its own strength and independently*, to support some essential allegation or issue raised by the pleadings testified to by the witness whose evidence is sought to be corroborated which allegation or issue, if unsupported, would be fatal to the case; and such corroborating evidence must of itself, *without the aid of any other evidence*, exhibit its corroborative character by pointing with reasonable certainty to the allegation or issue which it supports. *And such evidence will not be material unless the evidence sought to be corroborated itself supports the allegations or point in issue....* [Emphasis added.] [6 N.M. 260–61, 27 P. 477.]

*Bujac* says:

> ... *The corroboration required is not the general corroboration of the witness as to his credibility, but it is some form of evidence which tends, in and of itself, to establish the essential fact necessary to a recovery.* This may be done circumstantially in case direct evidence is not available ....* [Emphasis added.] [27 N.M. 11–12, 196 P. 397.]

Based upon these rules, a careful review of the record discloses no corroboration of plaintiff's testimony with reference to disability. The record indicates a number of witnesses who could have corroborated plaintiff's testimony but none appeared as witnesses. The physician, the only witness who supported plaintiff's claim, had no independent knowledge of her physical problems. None were demonstrated during his examination.

A review of the record creates a sympathetic approach to plaintiff's constant repetitive references to her disability. But under no reasonable rule can an appellate court, absent sitting as a juror in the case, substitute its judgment for that of the dis-

trict court. In arriving at this conclusion, I refrain from pointing to impeachment, and disputed testimony, of plaintiff.